[Civ. No. 8936. First Appellate District, Division One.—August 19, 1933.]

EMANUEL COHEN, Appellant, v. HELLMAN COMMER-CIAL TRUST & SAVINGS BANK (a Corporation) et al., Defendants; JOSEPH POLLARD, Respondent.

Patterson, Bailey & Montgomery, E. S. Patterson, Frederick I. Richman and William S. Scully for Appellant.

Tanner, Odell & Taft and Garratt B. Sargent for Respondent.

CASHIN, J.—Plaintiff brought suit against defendants above named, seeking the termination of a trust, the reconveyance of certain real property which was the subject of the trust, and an accounting. Joseph Pollard appeared in the action and with his answer filed a cross-complaint. He alleged that he was originally the owner of the land subject to the trust; that he entered into an agreement with John J. Jenkins and Irving H. Hellman whereby, in consideration of their promise to pay him $100 a month for his natural life, he conveyed the land to Hellman Commercial Trust and Savings Bank, a corporation, as trustee; that it was agreed that said payments were to be a charge thereon, and further, that he was to retain during his lifetime possession of a portion thereof; that according to certain escrow instructions given by him to the bank at the time of the conveyance the latter agreement was to have been made a part of the trust agreement executed by the bank; that without his knowledge the same was omitted therefrom; that the bank and plaintiff as well as Jenkins and Hellman had full knowledge of the agreement when their interests in the property were acquired. He asked that it be decreed that the bank's successor holds the title subject to said agreement and in trust for the payment of said monthly sums, and that as security therefor he has a vendor's lien thereon.

The trial court found that on February 21, 1924, a declaration of trust was executed by the bank, reciting that the real property mentioned, which was situated in San Bernardino County, had been conveyed to the bank by J. J. Jenkins to be held in trust as security for the payment of a note for $10,000 executed by Jenkins to the bank; that the bank was given power to sell, lease or exchange the property and apply the proceeds in payment of the debt, advancements and expenses; that the bank agreed to reconvey to Jenkins or his assigns before a sale of the property upon the payment of the indebtedness; that prior to the date of the declaration Joseph Pollard was the owner of the property and in November, 1922, while such owner, the same was purchased from him by Jenkins and defendant Hellman, a director and vice-

president of the bank, who as part of the purchase price agreed in writing to pay him $100 per month during his natural life; that this agreement should be a charge upon the property, and that it was further agreed in writing that he should have the possession during his life of such portion thereof as should be thereafter agreed upon by himself and Jenkins; that it was further agreed that the property be conveyed to said bank as security for the sum of $10,000 to be borrowed by Jenkins and which was to be used to pay off certain liens upon the property aggregating $4,200, and the settlement of pending litigation respecting an undivided half interest therein; that the bank should also hold the property in trust subject to Pollard's rights therein and to secure the monthly payments agreed to be made to him. The court further found that without Pollard's knowledge or consent the provisions agreed upon for the protection of his rights in the property were omitted from the trust agreement, although it was agreed between him and the bank and Jenkins, acting for himself and Hellman, that his conveyance should be subject to his rights above stated and that the bank should hold the property in trust for the additional purposes agreed upon; further, that at the time of the execution of the above declaration Jenkins and Hellman as part of the same transaction entered into the writing setting forth their agreement with Pollard as above stated, and that this was also delivered to the bank, which retains the same; that Pollard has at all times mentioned actually resided on a portion of the property described in the findings and upon which are situated his house and necessary outbuildings; that it was agreed by Jenkins and Hellman immediately after the making of the contract in November, 1922, that this should constitute the portion in which Pollard should retain a life interest; that in April, 1924, Hellman sold to plaintiff one-half of Hellman's interest in the property and beneficial interest in the trust, all subject to the obligations to Pollard and the latter's interest in the property; that prior thereto plaintiff, who was also a vice-president and director of the bank mentioned, had full knowledge of the agreements with Pollard and took his interest subject thereto; that thereafter plaintiff paid from time to time his proportionate share of the monthly payments agreed to be made to Pollard and recognized the obligations due the latter. The court also

found that the trustee sold portions of the property on contract and by deed; that the debt secured had not been paid from the proceeds, however, but partially by Jenkins and Hellman, and that the trust agreement was still in force and effect; that defendant Bank of America had succeeded the original trustee as such, and under the terms of the trust holds the funds, contracts and trusts originally held by the bank first mentioned; further, that no payments contrary to the trust agreement had been made as alleged by plaintiff; that the trustee had fully accounted to the beneficiaries for all moneys received and paid out, and as a conclusion that the plaintiff was not entitled to a judgment terminating the trust, or an accounting, or an injunction which was sought restraining payments by the trustee, or other relief.

The court determined that Pollard was entitled to a decree adjudging that the present trustee holds the property in trust to secure the monthly payments mentioned and subject to his right of possession during his life of a portion of the property, which was described in the decision and upon which Pollard resided. A judgment was entered accordingly. This judgment also provided that upon Pollard's death the property remaining should be held by the trustee subject to the trust for the benefit of plaintiff, the said Hellman and Hazel S. Jenkins, the executrix of the estate of J. J. Jenkins, now deceased, until the purpose of the trust had terminated. No decree was made with respect to the alleged vendor's lien.

Plaintiff, who has appealed, contends that the findings that he had notice of the agreement with Pollard and that the trustee had not breached its duties are unsupported; further, that Pollard had no place in the suit; that the court was without jurisdiction to enter a decree with respect to his interest in the property, and that the finding as to the particular portion thereof in which Pollard has a life interest is also without support.

■ As to the first finding the evidence, both direct and indirect, clearly shows that plaintiff had actual knowledge of the facts when he purchased from Hellman; moreover, Pollard was at all times in possession, and this was a relevant fact on the question of notice (25 Cal. Jur., Vendor and Purchaser, sec. 282, p. 834). ■ Under the trust agreement the trustee was authorized to lease, sell or exchange the prop-

erty and to make advancements for its care, protection and benefit. It appears that defendant Hazel S. Jenkins, the surviving wife of J. J. Jenkins, by consent of the trustee, cared for the property and negotiated sales of portions thereof. For all her services she was paid the equivalent of a commission on such sales, and the trustee also paid sums for equipment and certain of the amounts due monthly to Pollard. The testimony shows sufficiently that the sums received by Mrs. Jenkins were not, properly speaking, commissions upon the sale of real estate, as urged by plaintiff, but were payments for her services generally, and that these sums as well as those paid for equipment were reasonably necessary for the care and protection of the property. The trustee appears to have recognized the Pollard claims and made certain of the monthly payments on the assumption that such was its duty under the trust. In view of the conclusions of the trial court, this was proper, and we are satisfied that there was no breach of duty by the trustee in any of the respects alleged by plaintiff.

Several defendants, whose names were obviously fictitious, were joined in plaintiff's complaint. Pollard was not served with summons, but nevertheless appeared, alleging that he was sued as one of these defendants, and filed an answer and cross-complaint. Plaintiff raised no objection at the time but answered the cross-complaint, and later answered an amendment thereto. His objection was made for the first time at the trial. Plaintiff claims that he had the right to choose the parties he wished to sue, and that the court was without jurisdiction to entertain the Pollard pleadings.

As a general rule a plaintiff has the right to select the persons whom he desires to make defendants in the action (*Mercantile Trust Co.* v. *Stockton etc. Co.*, 44 Cal. App. 558 [186 Pac. 1049]). This, however, is subject to the right to intervene in a proper case and the power of the court to bring in parties necessary or proper to a complete determination of the controversy; and in actions of this character, where the evidence shows that a third person has an interest as a beneficiary in the subject-matter of the suit, the court may order him to be made a party (*O'Connor* v. *Irvine*, 74 Cal. 435 [16 Pac. 236]; *Alison* v. *Goldtree*, 117 Cal. 545 [49 Pac. 571]). The suit was one in which Pollard might prop-

erly have been allowed to intervene (*Ward* v. *Waterman,* 85 Cal. 488 [24 Pac. 930]; Code Civ. Proc., sec. 387); and, in view of the evidence, the court did not err in permitting him to continue as a party thereto.

The property subject to the trust is, as stated, situated in San Bernardino County, and the suit was brought in the county of Los Angeles. The banks make the claim that for this reason the court was without jurisdiction to entertain the same.

Section 5 of article VI of the Constitution provides that " . . . all actions for the recovery of the possession of, quieting the title to, or for the enforcement of liens upon real estate shall be commenced in the county in which the real estate, or any part thereof, is situated". In such cases, if the suit is brought in the wrong county the court is without jurisdiction, and the action must be dismissed; but the constitutional provision, being a limitation upon the jurisdiction of the court, is to be strictly construed, and its application is confined to those instances in which the complaint without reference to any pleadings by defendant states a case coming within the actions enumerated. (*Waters* v. *Pool,* 130 Cal. 136 [62 Pac. 385]; 25 Cal. Jur., Venue, sec. 9, p. 861; *Wood* v. *Thompson,* 5 Cal. App. 247 [90 Pac. 38]; *Miller & Lux* v. *Kern County Land Co.,* 140 Cal. 132 [73 Pac. 836]— which case in this respect overruled *Staacke* v. *Bell,* 125 Cal. 309 [57 Pac. 1012].) Plaintiff's action was not to recover the possession of the property or to quiet the title thereto, and no lien was sought to be enforced.

Based upon his allegations that the debt to the trustee had been paid, and that consequently the purpose for which the trust had been created had ceased, he sought a reconveyance of the property to those alleged to be the beneficiaries. In addition, upon the allegation that the trustee had misapplied funds received, he asked for an accounting of and judgment for his proportionate share of these funds.

As stated, the trustee had agreed to reconvey when the purposes of the trust should be fulfilled, and the action was one to enforce the trust and for an accounting, part of the relief sought being the performance of the trustee's promise to reconvey. When the purpose for which an express trust was created ceases the estate of the trustee also ceases (Civ. Code, sec. 871), and a bill in equity may be maintained by

those beneficially interested to extinguish it. (*Tyler* v. *Currier*, 147 Cal. 31 [81 Pac. 319]; *Fletcher* v. *Los Angeles Trust etc. Bank*, 182 Cal. 177 [187 Pac. 425]; *Ringrose* v. *Gleadall*, 17 Cal. App. 664 [121 Pac. 407].) It has been held that a trust created to secure a debt is but little more than a mortgage with power to convey, and that upon payment the property revests in the trustor without reconveyance (*Nilson* v. *Sarment*, 153 Cal. 524, 530 [96 Pac. 315, 126 Am. St. Rep. 91]), and also that the only purpose of requiring the execution of a deed of reconveyance is to make the record title clear. (*Sacramento Bank* v. *Alcorn*, 121 Cal. 379 [53 Pac. 813]; *Estate of Fair*, 132 Cal. 523 [60 Pac. 442, 64 Pac. 1000, 84 Am. St. Rep. 70]; *Montgomery* v. *Meyerstein*, 186 Cal. 459 [199 Pac. 800].)

A suit for specific performance and to compel a reconveyance is an action *in personam* (53 Cor. Jur., Reformation of Instruments, sec. 148, p. 992) and is not within the constitutional provision. (*Grocers' Fruit G. Union* v. *Kern County Land Co.*, 150 Cal. 466 [89 Pac. 120].) Nor is an action to declare a trust in real property one to quiet title. (*Donohoe* v. *Rogers*, 168 Cal. 700 [144 Pac. 958].) These provisions have no application to an action for the settlement of a trust, nor where the action is one to compel a trustee to perform his duties and close the trust. (*LeBreton* v. *Superior Court*, 66 Cal. 27 [4 Pac. 777]; *Rossi* v. *Caire*, 174 Cal. 74 [161 Pac. 1161].)

Under subdivision 1 of section 392 of the Code of Civil Procedure, actions for the recovery of real property or of an estate or an interest therein, or for a determination in any form of such right or interest, or for injuries to real property, must be tried in the county in which the subject of the action or some part thereof is situated, subject to the power of the court to change the place of trial as provided by the code; and the following cases cited by counsel were actions within the above code provision: *Baker* v. *Fireman's Fund Ins. Co.*, 73 Cal. 182 [14 Pac. 686]; *Sloss* v. *De Toro*, 77 Cal. 129 [19 Pac. 233]; *Smith* v. *Smith*, 88 Cal. 572 [26 Pac. 356]; *Booker* v. *Aitken*, 140 Cal. 471 [74 Pac. 11]; *Miller & Lux* v. *Kern County Land Co.*, supra; *McFarland* v. *Martin*, 144 Cal. 771 [78 Pac. 239]; *Franklin* v. *Dutton*, 79 Cal. 605 [21 Pac. 964]; *Donohoe* v. *Rogers*, supra; *Smalley* v. *Peckham*, 175 Cal. 146 [165 Pac. 438];

*Grocers' Fruit G. Union* v. *Kern County Land Co., supra;*
*Hannah* v. *Canby,* 1 Cal. App. 225 [81 Pac. 1035]; *Bart-*
*ley* v. *Fraser,* 16 Cal. App. 560 [117 Pac. 683]; *Reid* v.
*Kerr,* 64 Cal. App. 118 [220 Pac. 688]; *Kopke* v. *Carlson,*
98 Cal. App. 155 [276 Pac. 606]; *Stanley* v. *Barney,* 123
Cal. App. 139 [10 Pac. (2d) 1022]. In a few instances the
opinions in these cases contain the statement that the action
was commenced as required by the constitutional provision,
but an examination shows that this was not necessary to the
decision, the code section alone being applicable.

The subdivision of the code section does not affect the
jurisdiction of the court; and if the county in which the
action is commenced is not under its provisions the proper
place for the trial, the only remedy is a demand for a change
of venue; otherwise the objection is waived. (*Herd* v. *Tuohy,*
133 Cal. 55 [65 Pac. 139]; *Miller & Lux* v. *Kern County*
*Land Co., supra; Grocers' Fruit G. Union* v. *Kern County*
*Land Co., supra; Miller & Lux* v. *Madera Canal etc. Co.,*
155 Cal. 59, 73 [99 Pac. 502, 22 L. R. A. (N. S.) 391].)

 Here no objection to the venue was made; and plain-
tiff's action, if within the provisions of the said subdivision
of the code section, was nevertheless within the jurisdiction
of the trial court, and we are satisfied from the above deci-
sions that there was no constitutional objection to the com-
mencement or trial of his action in Los Angeles County.

 As respects the cross-complaint, in addition to the
claim that a vendor's lien should be decreed—and which in
effect the court denied—the gist of the action was the refor-
mation of the trust agreement in order to make it express the
real understanding which the court found was known to all
the parties to the suit. While no formal decree of reforma-
tion was made, this result was reached by the findings men-
tioned and by adjudging that the trustee hold the property
subject to Pollard's rights as therein determined.

As a rule a proceeding to reform a writing is *in personam*
and not *in rem.* (23 R. C. L., Reformation of Instruments,
sec. 52, p. 354.) Nevertheless, where the writing involves
the title to real property and the action would determine in
some form a right or interest therein, the case is within the
provisions of subdivision 1 of section 392 of the Code of Civil
Procedure (*Franklin* v. *Dutton, supra; Stanley* v. *Barney,*
*supra*); but as held in the cases hereinbefore cited, the re-

quirement that such actions be tried in the county in which the land is situated—as also the objection when brought in the wrong county—may be and is waived if there is no demand for a change of venue.

Pollard did not seek to quiet the title or to recover the possession of the land; and although he claimed a vendor's lien thereon his suit was not to foreclose such lien but for a decree declaring its existence and that the trustee hold the property subject to the original agreement. For these reasons his action was not within the constitutional provision mentioned, and no demand for a change of venue having been made the Superior Court of Los Angeles County had jurisdiction.

The terms of the original agreement were in writing, and knowledge thereof by all concerned was shown. It is clear that some of these terms were omitted from the trust agreement by mistake. Pollard, who was an aged man, appears to have entrusted the whole matter to Jenkins, Hellman and the bank, and, so far as shown, he received no independent advice as to the sufficiency of the bank's declaration of trust to cover the original agreement.

With respect to the portion of the property in which Pollard claimed a life estate it is contended that there was no evidence supporting the finding as to its legal description.

Pollard alleged that he made his home upon a portion of the property, and that it was agreed by the parties that he should retain possession of this portion. Plaintiff denied these allegations. The former testified that he had lived upon the property since 1905, and that the improvements thereon consisted of a house, barn and other outbuildings; but there was no testimony or other evidence sufficient to identify or show the legal description of the portion in which he was to retain a life interest, and the plaintiff's objection to the findings and decree in this respect must be sustained. With this exception the findings and judgment are fully supported. It will be necessary therefore to remand the case in order that this portion be identified and its legal description ascertained.

That portion of the judgment which decrees that said Joseph Pollard has a life estate in that portion of the northeast quarter of the northwest quarter of the southwest quarter of section 15, township 2 north, range 6 west, S. B. B.

&· M., beginning at a point which is south 34 degrees 12 minutes west 43.22 feet from the northwest corner of lot ten (10) block sixteen (16) of tract 1905—J. J. Jenkins subdivision of Happy Jack ranch, as recorded in book 27, page 36 of Records of San Bernardino County; thence north 14 degrees 46 minutes east 75.41 feet; thence north 83 degrees 34 minutes west 117.50 feet; thence south 19 degrees 34 minutes west 53.7 feet; thence south 72 degrees 55 minutes west 120.85 feet to the point of beginning, is reversed, with directions that the identity and legal description of the portion of the property of which it was agreed that .Pollard should retain possession during his life be determined. In all other respects the judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.