Civ. No. 29407.   Second Dist., Div. One.   June 14, 1965.]

LAUREL CREST, INC., et al., Petitioners, v. THE SU-
PERIOR COURT OF LOS ANGELES COUNTY, Re-
spondent; WAYNE VAUGHN et al., Real Parties in
Interest.

De Luca & Thabit and Fred De Luca, Jr., for Petitioners.

No appearance for Respondent.

Sims & Solomon and Gabriel W. Solomon for Real Parties
in Interest.

FRAMPTON, J. pro tem.*—Petitioners seek a writ of man-
date to compel the respondent court to set aside its order trans-
ferring a cause of action, for trial, from the County of Los
Angeles to the County of Kern, State of California.
Mandate is the appropriate remedy if petitioners are
entitled to relief (Code Civ. Proc., § 400), and the right to

*Assigned by the Chairman of the Judicial Council.

the relief prayed for must be measured in the light of the allegations contained in the complaint on file in the respondent court. (*Miller & Lux* v. *Kern County Land Co.*, 140 Cal. 132, 133-134 [73 P. 836] ; *Cohen* v. *Hellman Commercial T. & S. Bank*, 133 Cal.App. 758, 765 [24 P.2d 960] ; *San Fernando Valley C. of C.* v. *Thomas*, 123 Cal.App.2d 348, 350 [266 P.2d 891].)

The complaint below shows that petitioners are plaintiffs in a cause of action filed February 17, 1965, in the respondent court entitled ''Laurel Crest, Inc., a corporation, and Can Am Hangar Corp., a corporation, joint venturers, doing business under the fictitious firm name of Wiley Land Co., a joint venture, Plaintiffs, vs. Wayne Vaughn and Evelyn G. Vaughn, individually and as husband and wife, James E. Smith and Violet M. Smith, individually and as husband and wife, Joe Fambrough and Marie H. Fambrough, individually and as husband and wife, Jo Ann Investment Co., a corporation, Javico, Inc., a corporation, AGV Co., Inc., a corporation, Edmaco, Inc., a corporation, Evaco, Inc., a corporation, as co-partners doing business under the firm name and style of Golden State Homes, a general partnership, Does I through X, inclusive, Defendants, Number NW C 6260.''

The complaint in the first cause of action alleges in substance that petitioners Laurel Crest, Inc., and Can Am Hangar Corp., are California corporations each having its principal place of business in the County of Los Angeles, State of California; that these corporations are engaged in a joint venture under the fictitious name and style of Wiley Land Company, one of the petitioners herein; that the individually named defendants each are residents of the County of Kern, State of California. The complaint further alleges that the defendants Jo Ann Investment Co., Javico, Inc., AGV Co., Edmaco, Inc. and Evaco, Inc., each are California corporations doing business within the state, under the fictitious firm name and style of Golden State Homes, a named defendant, and that such corporation defendants are the corporate *alter egos* of the individually named defendants.

It is further alleged that plaintiffs had purchased certain real property situated in the County of Los Angeles which is the subject of this litigation. That in connection with such purchase, plaintiffs had executed a promissory note in favor of the seller, the LaSalle Estate, in the sum of $2,201,500 secured by a deed of trust on a portion of the real property and upon which plaintiffs became obligated to pay to the

seller an annual payment of $444,300 plus interest in the sum of $132,000 on or before December 12, 1964. That, in addition to the foregoing, and in connection with such purchase, plaintiffs executed a promissory note in the sum of $260,000 secured by a deed of trust on a portion of the real property here involved, in favor of Home Savings and Loan Association, all of which was due and payable on or before December 12, 1964. It further appears from the complaint that on June 25, 1964, in the City of Los Angeles, plaintiffs as sellers and defendants as buyers entered into an escrow designated as Number 16003 with the Occidental Escrow Company wherein plaintiffs agreed to sell and defendants agreed to buy the real property here involved. That defendants were aware at the time of the opening of this escrow of plaintiffs' obligation to LaSalle and Home Savings and of plaintiffs' financial inability to meet such obligations unless the defendants met their obligations as buyer under the terms of the escrow and that defendants promised to fulfill such obligations so that the escrow would close not later than August 25, 1964. It is then alleged that plaintiffs in reliance upon such promise executed a promissory note in the sum of $18,254.58 in favor of C-S-T Engineering Company, due and payable on or before August 25, 1964, and did nothing further with respect to obtaining a buyer for the real property, or obtaining finances with which to pay the obligations to LaSalle and Home Savings. It is then alleged that on August 25, 1964, plaintiffs appeared at the escrow office for the purpose of closing the escrow, but the defendants failed to appear. It is further alleged that on August 26, 1964, both plaintiffs and defendants met at the escrow office at which time defendants stated that they would be unable to close the escrow because "their financing was not available." At this juncture the complaint is not clear as to the details of what followed. It does appear, however, from the general allegations, that on August 26, 1964, the parties agreed to extend the closing date of escrow 16003 to and including September 10, 1964, and on August 27, 1964, a new escrow numbered 16059 was opened. Between these two escrows it appears that defendants, being aware of the precarious financial situation of plaintiffs, and having failed to fulfill their obligation under escrow 16003, agreed to make available to the plaintiffs the sum of $600,000 in order that plaintiffs could meet their obligations to LaSalle and Home Savings which would become due and payable on December 12,

1964. Defendants were to receive $50,000 for this service. It further appears from general allegations in the complaint that in the amendment to escrow 16003 and in escrow 16059, plaintiffs agreed to transfer title to the land to defendants upon the understanding that defendants would reconvey the same to plaintiffs upon plaintiffs finding buyers for the property. It is then alleged that plaintiffs, in reliance on defendants' promise to reconvey, found two buyers, one who agreed to purchase a portion of the property for $775,000 and another who agreed to purchase a portion described as ''the commercial acreage'' for $350,000. The complaint contains the allegations that the defendants' promises to close escrow 16003 and to abide by the amendment thereto as well as their promise to reconvey under escrow 16059 were false, and were made without intention to perform them, and that plaintiffs believed the promises to be true and relied thereon. It further appears from the complaint that, subsequent to August 27, 1964, certain events occurred with respect to the real property the details of which are not pleaded, which caused an enhancement in the value of the property to the extent of at least $375,000. It is then alleged that the defendants with the intent to wrongfully compel the plaintiffs to sell the property to the defendants in accordance with the terms of escrow 16003 as it was originally drawn, and in violation of their promise to reconvey under the terms of the financing agreement as provided in escrow 16003 as amended and escrow 16059, and with the knowledge that the plaintiffs, in reliance on defendants' promise to reconvey, had entered into one contract for the sale of a portion of the real property to the Francisco Building Company for a consideration of $775,000, did, on September 29, 1964, maliciously and without probable cause, file an action in the Superior Court of Los Angeles County against plaintiffs for declaratory relief, being Number 846531, and caused a lis pendens to be filed against the subject property, and that plaintiffs' purchaser, the Francisco Building Company intervened in said action. It is claimed that the filing of the declaratory relief action and the lis pendens was done with malice and without probable cause in order to force the plaintiffs to sell the subject property to defendants pursuant to the terms of escrow 16003, opened June 25, 1964, and which was then long overdue because of the continuing failure of defendants to place sufficient funds in the escrow in order to close it. It is further alleged that on October 7, 1964, plaintiffs filed an answer

to the declaratory relief action together with a motion for summary judgment and that the motion was set for hearing on October 19, 1964. That prior to the date for hearing on the motion for summary judgment the defendants asked leave to file a first amended supplemental complaint. On November 12, 1964, plaintiffs filed their demurrer to the complaint and supplemental complaint for declaratory relief. Plaintiffs further allege that the defendants obtained numerous continuances of the hearings on the foregoing matters, all to the detriment of plaintiffs to the end and for the purpose of placing plaintiffs in such a precarious financial situation that they would have to complete the sale of the real property to the defendants. The complaint further alleges that the plaintiffs, in order to meet their financial obligations and because of economic necessity, were, on December 11, 1964, forced to sign a mutual release, in order to obtain funds necessary to meet their obligations and to prevent the loss to them of the real property under consideration. It is then alleged that plaintiffs intend that the service of the summons shall constitute notice of rescission of the mutual release. The prayer as to the first cause of action asks for a declaration that the mutual release has been rescinded and for a restoration of the subject real property, or in the alternative, general damages in the sum of $375,000; attorneys' fees in accordance with the provisions of the escrow agreement in the sum of $125,000; and punitive damages in the sum of $1,000,000.

The second cause of action incorporates the allegations of the complaint as contained in the first cause of action and contains the further allegations that defendants claim title to the real property under a deed executed and delivered by plaintiffs to defendants on December 11, 1964, and which is claimed to be void because it was executed and delivered by plaintiffs to defendants under economic duress exerted upon plaintiffs by the defendants. Under the second cause of action plaintiffs ask for a decree requiring the surrender and cancellation of the deed and a judgment that plaintiffs are the owners of the real property and that defendants have no right, title or interest therein.

The third cause of action incorporates the allegations of the complaint as set forth in the first cause of action and alleges further that the transfer of the title to the real property by plaintiffs to defendants was obtained by the fraudulent promise on the part of defendants to reconvey the same

to the plaintiffs and that such transfer was made solely for the purpose of permitting the defendants to obtain the necessary financing required by the plaintiffs. Under the third cause of action plaintiffs ask for a judgment decreeing that defendants hold the title to the real property in trust for the benefit of the plaintiffs; that defendants be compelled to reconvey legal title to the real property to the plaintiffs; for general damages in the sum of $375,000; attorneys' fees in the sum of $125,000; and punitive damages in the sum of $1,000,000.

On April 14, 1965, the defendants filed and served a notice of motion for change of venue to transfer the place of trial of the action commenced by plaintiffs from the County of Los Angeles to the County of Kern. The motion was predicated upon the fact that the defendants were residents of the County of Kern and, therefore, the latter county was the proper place for the trial of the action. On April 23, 1965, the respondent court granted the motion for change of venue and ordered the action transferred for trial to the County of Kern.

The copy of the complaint attached to the petition refers to and incorporates many exhibits which are apparently attached to the original complaint below and which have not been submitted here. Under these circumstances this court is left to conjecture as to the meaning and scope of the various escrow agreements, the mutual release and the declaratory relief action filed by the defendants in which one of plaintiffs' purchasers intervened.

While the ultimate relief sought by plaintiffs is the restoration of the title to real property and damages, such relief can be obtained only by rescission of the mutual release and cancellation of the deed of conveyance based upon a showing that they were obtained by the fraud alleged in the complaint. Where plaintiffs' right to quiet title depends upon a successful attack upon the mutual release and deed of conveyance by a showing that they were obtained by fraud, the quiet title action is incidental to the action to set aside such mutual release and deed of conveyance. (*Leeper* v. *Beltrami,* 53 Cal.2d 195, 216 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803].) The primary purpose of the action being to rescind the mutual release and to cancel the deed of conveyance, based upon fraud, such action is transitory in its nature and not local (*Reid* v. *Kerr*, 64 Cal.App.117, 120 [220 P. 688]; *Howe* v. *Tucker*, 219 Cal. 193 [25 P.2d 832]; *Postin* v. *Griggs*, 66 Cal.

App.2d 147, 149 [151 P.2d 887]), therefore the proper place for the trial thereof is in the county of defendants' residence. (Code Civ. Proc., § 395.)

The petition is denied.

Wood, P. J., and Lillie, J., concurred.