[Civ. No. 55939. Second Dist., Div. Four. Sept. 5, 1979.]

JHIRMACK ENTERPRISES, INC., Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
STEPHEN REDDING & ASSOCIATES, INC., et al.,
Real Parties in Interest.

**COUNSEL**

Gibson, Dunn & Crutcher, Frederick R. Wirtz, Cavalletto, Webster, Mullen & McCaughey and Richard C. Whiston for Petitioner.

No appearance for Respondent.

Griffith & Thornburgh and Eric R. Van de Water for Real Parties in Interest.

OPINION

KINGSLEY, J.—Pursuant to section 400 of the Code of Civil Procedure, petitioner seeks review of an order of respondent court, denying its motion for change of venue. We grant the peremptory writ.

Petitioner is a California corporation, with its residence in Shasta County. The real party in interest, and two individuals who are stockholders in it, brought suit in Santa Barbara County against petitioner. The complaint alleges in its first cause of action, a breach by petitioner of a distributorship agreement; in its second cause of action the tort of interference with contractual obligations and in the third cause of action, the tort of interference with prospective economic advantage. The fourth cause of action seeks reformation of the distributorship agreement and the fifth cause of action seeks an injunction restraining petitioner from continuing its breach and interference with contractual obligations and prospective economic advantages.[1]

In the complaint, which has not been answered, the following relevant facts are alleged:

(a) In 1972, the two individual plaintiffs entered into an exclusive distributorship agreement with the petitioner (Enterprises), which provided that these plaintiffs were to purchase from Enterprises certain products—"f.o.b. . . . Redding or at such other place as Distributor shall select from time to time"—which products plaintiffs would then distribute in a specified territory which was extended in 1974 to include Santa Barbara County and Ventura County. The defendant corporation had its principal place of business in Shasta County at all times up to and including the filing of the complaint. The complaint does not allege where the agreement was entered into or was to be performed.

(b) In 1975, the defendant entered into an amended agreement with the individual plaintiffs which altered the term of the 1972 agreement from the original 20 years to an indefinite period. In 1976, the defendant

---

[1] A preliminary injunction has been denied, based on the improbability of success of the judicial enforcement of specific performance of a distributorship agreement.

entered into another successor agreement with the corporate plaintiff, Associates (which corporation had apparently been formed in the interim by the individual plaintiffs to carry on the expanding business), which substituted Associates as the distributor in place of the individual plaintiffs. The 1976 agreement decreased the term of the distributorship to 1 year, thereafter subject to termination by either party at will upon 30 days' written notice. The parties performed under these contracts from 1972 to 1979, and Associates was successful in creating a local market for its products in the Santa Barbara County area.

(c) The agreement was breached by the petitioner in Santa Barbara County when an officer of Associates read, in that county, a letter dated January 26, 1979, mailed from defendant's officer in Shasta County to Associates' officer in Santa Barbara. The letter informed Associates that the distributorship was canceled as of that date and that Associates had no authorization to distribute Enterprises' products. The complaint also alleges that the refusal by Enterprises to supply products, *at* Santa Barbara, constituted a breach in that county.

(d) On or about January 26, 1979, Enterprises notified all subdistributors with which Associates had contractual relations in the distributorship territory that Associates was as of that date no longer the authorized area distributor of Enterprises' products and that the subdistributors were offered distributorships for their areas. Enterprises also notified the "ultimate customers" of Associates, retailers in the area, by form letter and by telephone that Associates was no longer the authorized area distributor and that Enterprises' products could, as of January 26, 1979, only be purchased directly from Enterprises.

(e) The complaint further alleges that the breach of contract (first cause) and the intentional interference with prospective economic advantage (third cause) were done with the personal motive of injuring the plaintiffs' business in Santa Barbara County.

(f) The complaint alleges (fourth cause) that the term of the distributorship agreement was lessened from 20 years to only 1 year by the fraud and economic duress practiced by the defendant on the plaintiffs. In essence, plaintiffs allege that defendant lied as to the nature of the changes contained in the 1975 and 1976 agreements and intentionally failed to disclose to them that these agreements modified the original term of the distributorship.

The petitioner, by declarations and reference to the distributorship agreements incorporated in the complaint by reference, alleges that Shasta County is the proper venue as to the contract causes of action (first and fourth), as that is where the contract was entered into, where the contract was to be performed and where the obligation arose, where the contract was allegedly breached, and where the petitioner's corporate residence is located.

The petitioner does not dispute that venue is properly laid in Santa Barbara County as concerns the causes of action in tort for interference with contractual obligation, interference with prospective economic advantage, fraud, and economic duress.

The trial court ruled that the contract was entered into, was to be performed in, and was breached in Shasta County, and that venue as to the causes for breach of contract was proper only in that county. It ruled that as to the causes stated in tort, venue was properly laid in Santa Barbara County.

Solely because the defendant is a corporation, however, the court ruled that Code of Civil Procedure section 395.5 and *Karson Industries, Inc.* v. *Superior Court* (1969) 273 Cal.App.2d 7, 10 [77 Cal.Rptr. 714], required that the defendant negate the propriety of venue in Santa Barbara County "on all possible grounds" to be entitled to a change of venue of the action. The court interpreted this language to mean that venue as to all causes stated must be improper as laid.

The question of first priority is whether corporate defendant's rights are to be treated differently from those of an individual defendant in a multiple cause of action case by requiring the corporate defendant to show that venue as laid is improper in the forum as to all causes of action while an individual defendant need show only that venue is improper as to any one cause of action.

If, as the real party in interest (Associates) contends, a corporate defendant in a multiple cause of action case must negate the 'propriety of venue as laid on all possible grounds" as to all causes of action stated, then the showing that the tort causes of action (interference with contract obligations, interference with prospective economic advantage, fraud, and economic duress) are properly laid in Santa Barbara County where the liability (injury) occurs, is sufficient to defeat petitioner's request for

transfer and eliminates the necessity of determining the propriety of venue as laid concerning the contract causes of action (first and fourth).

If, however, we accept the petitioner's contention that a corporate defendant need only show improper venue as to any one of the separate causes of action to obtain a change of venue—as would an individual defendant—then it also must be determined whether venue on the contract causes is properly laid in Santa Barbara County. As stated above, the trial court determined that venue as to the breach of contract clause was improperly laid in the forum.

■ There is a long established principle that when a complaint states multiple causes of action, a defendant who is entitled to a change of venue as to one cause is entitled to a transfer of the entire action. In *Ah Fong* v. *Sternes* (1889) 79 Cal.30, 33 [21 P. 381], the court said: "It is the plaintiff's own doing if the complaint be so drawn. He cannot deprive the defendant of his right to a change of venue by the addition of something to the complaint. If this were not the rule, it would be very easy for a plaintiff to defeat the defendant's right in the matter. All that plaintiff would have to do would be to add another cause of action to his complaint. It need not be a genuine cause of action. And it would not matter whether the two causes of action were properly united or not. For the defendant could not compel their separation by demurrer before moving for a change of venue, because he is required to take his proceedings for such change at the time of answering or demurring. (Code Civ. Proc., sec. 396.) And the 'right is to be determined by the condition of things existing at the time the parties claiming it first appeared in the action.' "

The subsequent case law has applied that principle to corporations who are defendants in multi-cause actions.

*Sanborn* v. *Pomona Pump Co.* (1933) 131 Cal.App. 241 [21 P.2d 124] was an action against a corporation upon a complaint filed in Kern County, containing three counts. The first two were based upon a written contract which was allegedly breached in Kern County. The third was on subsequent contract to pay money. Substantial evidence supported the finding of the trial court that this contract was made and was to be performed in Los Angeles County. Thus the corporate defendant did not negate venue as to the first two counts, but it did establish that Kern County was not a proper place of trial for the third cause of action. The appellate court explained its decision as follows: "It has been held that

when a complaint has a double aspect, under one of which the defendant has the right to change the place of trial, and under the other he has no such right, it will be construed against the pleader and the case transferred. The same result is reached where there are two causes of action, under one of which there exists the right of transfer, and, where, under the other no such right exists. (*Ah Fong* v. *Sternes,* 79 Cal. 30 [21 Pac. 381].) It follows that the order transferring this case was properly made." (Pp. 244-245.)

We have not been cited to or found any case which distinguishes between individual and corporate defendants in applying this multiple-cause principle.

*Abbott* v. *Peoples Nat. Fire Ins. Co.* (1933) 132 Cal.App. 357 [22 P.2d 544], was an action brought in Tulare County against a corporation upon two counts. The first was on a draft drawn and payable outside of Tulare County. The second cause of action was in tort, and could not be the basis for a transfer. The appellate court, in affirming an order transferring the case to the residence of defendants, made no reference to the corporate status of the parties. The court simply observed (at p. 359) that "if one cause of action entitled defendants to a transfer, joining another cause which did not justify a transfer would not prevent the transfer."

Other cases stating the rule with no apparent distinction between individual and corporate defendants are *Cal. Rex Mach. Sales* v. *Valley Materials* (1958) 161 Cal.App.2d 504, 505 [326 P.2d 889]; *Rosen* v. *Kessler* (1956) 145 Cal.App.2d 676, 683 [303 P.2d 110]; *Lucas* v. *Lucas Ranching Co.* (1937) 18 Cal.App.2d 453, 457 [64 P.2d 160].

The respondent trial court relied upon the language of Code of Civil Procedure, section 395.5 (formerly found in Cal. Const., art. XII, § 16) and the language in *Karson Industries, Inc.* v. *Superior Court* (1969) 273 Cal.App.2d 7, 8-9 [77 Cal.Rptr. 714].

The code section states: "A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases."

The language relied upon in *Karson* is that a corporate defendant seeking a change of venue "has the burden of negating the propriety of venue as laid *on all possible grounds*." (Italics in original.)

The *Karson* case was based upon a complaint containing a single cause of action. The court did not have before it the situation in which one of several counts in the complaint requires a transfer.

However, the language in *Karson* was quoted from *Smith v. Stanford Research Institute* (1963) 212 Cal.App.2d 750, 753 [28 Cal.Rptr. 481], which was a multiple-cause case. One count was for wrongful death caused by the negligent operation of an airplane. The second was for breach of warranty as to the fitness of the airplane and its equipment. Defendant Stanford Research Institute moved to transfer the case from San Francisco to San Mateo County, which was its principal place of business, upon the ground that the accident did not occur in San Francisco. In reversing the order granting a change of venue the appellate court pointed out that the defendant failed to show where the contract underlying the warranty counts was entered into or was to be performed; and hence defendant failed to overcome the presumption that the place where the action was brought (San Francisco) was the proper place of trial. The court said (at p. 754): "Thus, a corporate defendant seeking a change of venue has the burden of negating the propriety of venue as laid on all possible grounds. (*Shida* v. *Japan Food Corp.,* 185 Cal.App.2d 443, 447 [8 Cal.Rptr. 271]; *Shores* v. *Chip Steak Co.,* 130 Cal.App.2d 620, 623 [279 P.2d 591].)"

Both *Shida* and *Shores* were cases containing a single cause of action. (In *Shida* there were two counts, both based upon the same contract.) When the opinions in *Shida* and *Shores* spoke of defendants' burden to negate venue "on all possible grounds" they were referring to the five grounds of venue listed in article XII, section 16, of the California Constitution (now Code Civ. Proc., § 395.5).

The *Smith* case does not mention the principle which California courts have been applying consistently in multiple cause of action cases. There is nothing in the *Smith* opinion to indicate that the court had considered either the authorities applying the principle or the reasoning upon which those decisions were based. *Smith* appears to be an *aberrant* decision which overlooked the principle applicable to multiple-cause complaints. We therefore follow the multiple-cause rule which has uniformly been followed in every case which has considered it.

I

Since we conclude that *Sanborn* states the proper rule to be applied in this multiple cause of action case, we turn to consider whether venue was improperly laid as to the two contract causes of action. We determine that it was.

The trial court determined that the contract was made in, to be performed in, and breached in the petitioner's residence county. The record supports these findings, and thereby shows the proper place of the trial of the contract causes of action is in Shasta County.

(a) *Place of Making*:

■ The last act necessary to the validity of a contract, usually the act constituting acceptance, is the place of its making. (*Braunstein* v. *Superior Court* (1964) 225 Cal.App.2d 691, 696 [37 Cal.Rptr. 666].) Section 31 of the agreement in this case provides that acceptance by Enterprises at its residence is necessary to the validity of the agreement. The declaration of Irene Redding avers that she was the last party to execute the 1976 agreement on behalf of Jhirmack Enterprises and that she did so at its county of residence.

(b) *Place to Be Performed*:

Performance on the part of the defendant is the performance determined here. (*Meyer* v. *Burdett Oxygen Co.* (1959) 170 Cal.App.2d 519, 523 [339 P.2d 243].) Defendant's performance under paragraph 2 of the 1972 agreement was to ship products f.o.b. Redding. In practice, defendant placed shipments on board an independent carrier at Redding. California Uniform Commercial Code section 2319 indicates that once the seller places the goods in the possession of the carrier, delivery is completed as to it. Thus, the "refusal to deliver products at Santa Barbara County" alleged in the complaint is not an accurate assessment of the place of breach.

(c) *Place Contractual Obligation Arose*:

The place of making of the contract (see section (a) hereinabove) is the place where the obligation arises. (*Armstrong* v. *Smith* (1942) 49 Cal.App.2d 528, 533-534 [122 P.2d 115].) The distributorship contract was made in the petitioner's residence county.

(d) *Place Where Breach Occurred*:

Real party in interest argues that the breach occurred in Santa Barbara County where Stephen Redding of Associates *read* the termination letter of January 26, 1979, at Associates' offices in that county. The *Karson* case, *supra,* 273 Cal.App.2d 7, at page 10 indicates that the place of mailing of a notice of cancellation, rather than the place of receipt, is the location of the act with regard to venue.

(e) *Venue on Reformation of Contract*:

■ Venue on a cause of action for reformation of a contract is determined as an action based on contract. (*Martinez* v. *Martinez* (1950) 99 Cal.App.2d 425 [221 P.2d 986].) This cause of action (fourth) would thus have proper venue in petitioner's residence as well.

■ Under the multiple-cause rule discussed above, petitioner, being entitled to try the contract causes of action in Shasta County is entitled to have the whole dispute resolved in a single trial.

Let a peremptory writ of mandate issue, directing respondent court to vacate its order in its case No. 125979, entitled Stephen Redding & Associates, Inc. v. Jhirmack Enterprises, Inc., which order denied the motion of petitioner for a change of venue to Shasta County and to enter a new and different order granting said motion.

Files, P. J., and Jefferson (Bernard), J., concurred.