[Civ. No. 51014. First Dist., Div. Four. Apr. 30, 1981.]

CHARLES E. MASSAE et al., Petitioners, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY,
Respondent;
RAOUL J. LeCLERC et al., Real Parties in Interest.

COUNSEL

Thomas K. McGuire for Petitioners.

No appearance for Respondent.

Robert V. Blade, in pro. per., Blade & LeClerc and Mitchell, Dedekam & Angell for Real Parties in Interest.

OPINION

CALDECOTT, P. J.—Petitioners Charles E. and Bernita E. Massae seek mandate (under Code Civ. Proc., § 400) to compel the Humboldt County Superior Court to vacate its order changing venue and to enter a new order denying a change of venue. This court issued the alternative writ.

The issue is whether the Massaes' action is "local" or "transitory" for venue purposes. If it is local, it should have been retained in Humboldt County. If it is transitory, the trial court's order was proper. (Cf. generally, 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 416, p. 1248 et seq.)

The Massaes filed their complaint in Humboldt County. They take the position that the action would determine a right to Humboldt County real property and therefore is local to and should be retained in

Humboldt County under Code of Civil Procedure section 392, subdivision (1), which provides: "Subject to the power of the court to transfer actions and proceedings as provided in this title, the county in which the real property, which is the subject of the action, or some part thereof, is situated, is the proper county for the trial of the following actions: [¶] (a) For the recovery of real property, or of an estate or interest therein, or for the determination in any form, of such right or interest, and for injuries to real property; [¶] (b) For the foreclosure of all liens and mortgages on real property."

The primary real parties in interest, Attorneys Robert V. Blade and Raoul J. LeClerc, defendants in the trial court, argue that the Massaes' action "mixes" local and transitory elements and therefore that Blade and LeClerc are entitled to have venue changed to their place of residence, Butte County. California law has long favored venue at defendant's residence. (Cf. 2 Witkin, *op. cit. supra,* § 444, p. 1272, § 498, p. 1320; cf. also Code Civ. Proc., § 395, subd. (a).) Accordingly, Blade and LeClerc (joined by a corporate defendant not directly involved in the venue issue) moved for a change of venue to Butte County on the ground that the Humboldt County Superior Court was "not the proper court" under the venue statutes. (Code Civ. Proc., §§ 396b, 397, subd. 1.)

■ The orthodox rules for analysis of local-transitory venue issues are (1) that whether a cause of action is local or transitory is to be determined on the basis of the relief sought, (2) that where both local and transitory relief are sought on the basis of a single cause of action the cause of action will be characterized on the basis of the relief *primarily* sought (the "main relief rule"), (3) that where there is more than one cause of action and both local and transitory causes have been identified, choice of venue will be made on the basis of various "mixed action" rules, and (4) that for these purposes causes of action are to be identified and distinguished, and relief characterized, from the complaint as it stands at the time of the motion for change of venue. (Cf. 2 Witkin, *op. cit. supra,* §§ 423-427, pp. 1255-1258, §§ 497-499, pp. 1318-1323.) ■ The burden of showing *facts* to justify a change of venue is on the moving defendant (cf. 2 Witkin, *op. cit. supra,* § 522, p. 1342) inasmuch as "[t]he plaintiff's choice of venue is presumptively correct." (*Thielen* v. *Superior Court* (1963) 219 Cal.App.2d 217, 218 [33 Cal.Rptr. 1). But once the defendant has shown, in support of his motion, that he lives in another county, "[t]he policy of the law favors the right of trial at the defendant's residence. Accordingly it is said that

the complaint will be strictly construed against the plaintiff who seeks to lay the venue in a place other than the defendant's residence . . . ." (2 Witkin, *op. cit. supra*, § 426, p. 1257.)

In this action the trial court concluded that "the action is personal and not local and the proper jurisdiction is the county of residence of the defendant," and ordered venue changed to Butte County. "After the judge has ruled, the familiar principles of appellate review apply . . . ." (2 Witkin, *op. cit. supra*, § 531, pp. 1351-1352.) There is no evidentiary conflict: the issue for this court is purely one of law.

## THE COMPLAINT

In respects relevant to the venue issue, the Massaes' complaint alleges: Blade has been the Massaes' lawyer; LeClerc is Blade's law partner. The Massaes and the Blades own real property in Humboldt County, each as to an undivided half interest. The Massaes were indebted to Blade for legal services and for advances made and to be made in connection with a joint business venture, and the Massaes and Blade entered into a written agreement by which the Massaes acknowledged their various indebtednesses to Blade and agreed to assign a preexisting note, and a deed of trust on the Humboldt County property, to Blade and to execute a new deed of trust on the Humboldt County property in Blade's favor. It is the new deed of trust which is in issue. It was executed by the Massaes on the day they signed the written agreement, on a printed form which recites that the trust conveyance is made "with power of sale" and which contains (by incorporation from a fictitious trust deed) a standard power of sale clause. The new deed of trust also recites that it was given to secure (among other things) "payment of the indebtedness evidenced by written agreement of even date herewith." The written agreement contains a statement (written by Blade) that "It is understood that the [Humboldt County] property will not be sold without your prior approval as to price and terms."

Three years later Blade substituted LeClerc for the original trustee under the deed of trust and recorded a notice of default and election to sell the Humboldt County real property under the deed of trust, alleging failure to pay expenses and fees under the written agreement. The Massaes advised LeClerc that the written agreement precluded sale of the property without prior approval; 10 days later LeClerc executed a notice of trustee's sale.

The Massaes pray for (1) a *declaration* that they have a right to give or withhold approval of the price or terms of any proposed sale, (2) *reformation* of the deed of trust to rescind the standard power of sale provision it contains, (3) a temporary restraining order and *injunctions* to prevent a sale without prior approval, and (4) damages, costs, and omnibus relief.

In generalized form the dispositive question here is whether an action to reform a standard California deed of trust to delete its power-of-sale clause is an action for "the determination in any form, of [a] right or interest [in real property]" within the meaning of Code of Civil Procedure section 392, subdivision (1). It is necessary first to deal with two spurious issues raised by the parties.

## Spurious Issues

### 1. Mixed Actions

Blade and LeClerc seem prepared to concede that an action to reform the deed of trust would be local, but that in this complaint the Massaes seek to reform *not only* the deed of trust *but also* the written agreement, "to not only delete the language 'with power of sale' contained in the deed of trust, but to include in both documents language which would provide that the beneficiary may not cause said deed of trust to be enforced, either judicially or non-judicially, until the death of plaintiffs and then only if said real property is sold by the owners thereof." To this premise Blade and LeClerc would apply several California cases which have held that an action to reform the *secured obligation as well as* the security instrument is transitory. (*Howe v. Tucker* (1933) 219 Cal. 193 [25 P.2d 832]; *Jacobs v. C. H. Smith Lumber Co.* (1928) 206 Cal. 128 [273 P. 571]; *Nelson v. Crocker Nat. Bank* (1975) 51 Cal.App.3d 536, 540-541 [124 Cal.Rptr. 229]; *Thielen v. Superior Court, supra*, 219 Cal.App.2d 217.) Their position is evocative of the long-established mixed action rule that: "The plaintiff cannot, by joining a local with a transitory cause, deprive the defendant of his normal right to trial of the transitory cause at the county of his residence. The policy in favor of residence venue in transitory actions is stronger than that in favor of local venue in real actions. Hence, if the two causes are to be tried together, and the action is filed where the land is located, the defendant may insist on a change of venue to his residence." (2 Witkin, *op. cit. supra*, § 498, p. 1320; cf. *Central Bank v. Superior Court* (1973) 30 Cal.App.3d 913, 918 [106 Cal.Rptr. 912].)

The Massaes challenge this position on the strength of a case which construes a recent amendment to Code of Civil Procedure section 395 (the defendant's residence provision) to mean "that section 395 is to be applied only when there is no other applicable venue provision." (*Delgado v. Superior Court* (1977) 74 Cal.App.3d 560, 564 [141 Cal.Rptr. 528]; cf. also *Central Contra Costa Sanitary Dist. v. Superior Court* (1978) 84 Cal.App.3d 702, 705-706 [148 Cal.Rptr. 801].) Although *Delgado* deals directly with a conflict between section 395 and Code of Civil Procedure section 394, characterized by Witkin as "a *removal* or *change of venue* statute, which comes into operation only where the action is filed in a county which is proper under the ordinary venue rules" (2 Witkin, *op. cit. supra*, § 492, p. 1315), *Delgado* may ultimately have substantial impact on the orthodoxy that in a mixed action a transitory cause will dominate a local cause.

But neither mixed-action orthodoxy nor *Delgado* appears relevant to this action. The short answer is that mixed action rules do not apply to the Massaes' complaint because the complaint states only a single cause of action. Although in form the complaint is divided into three "causes of action," it is apparent that as a whole it purports to describe a single "primary right" assertedly breached by defendants to the detriment of the Massaes. (Cf. 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 22, p. 1707 et seq.; cf. also *Peiser v. Mettler* (1958) 50 Cal.2d 594, 605 [328 P.2d 953, 74 A.L.R.2d 1].) The separately stated "causes of action" of the complaint vary only insofar as apparently necessary to support the various types of *relief* requested in the prayer. (Cf. *id.*, § 27, p. 1712 et seq.) The Massaes' asserted "primary right" is to give or withhold approval of the price or terms of any proposed sale; contrary to the premise advanced by Blade and LeClerc it does not appear from the complaint that the Massaes seek to rewrite the written agreement (as distinct from the deed of trust) in any respect.

### 2. Declaratory Relief Rules

Seizing upon the fact that the Massaes sought, among other relief, a declaration of their rights, both parties misapply the holding of *Shores v. Chip Steak Co.* (1955) 130 Cal.App.2d 620 [279 P.2d 591] and over-tax the authoritatively discredited "general rule" which *Shores* is assumed to represent.

The general rule is that "[w]here the complaint seeks declaratory exoneration from an alleged liability shown to be asserted by the

defendant" against the plaintiff, for venue purposes the action should be treated as though the defendant were suing the plaintiff upon the alleged liability. (1 Chadbourn et al., Cal. Pleading (1961) § 323, pp. 251-252; cf. 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 454, p. 1279.) The only available rationale for what Chadbourn and his colleagues call "[t]his 'inversion-of-the-parties' approach to venue" was stated in *Standard Brands of California* v. *Bryce* (1934) 1 Cal.2d 718 [37 P.2d 446]. Standard Brands filed a complaint for declaratory relief, alleging that it owned certain land and that defendants Bryce, who owned adjoining land, were threatening to commence an action against Standard Brands for encroachments. The land was in Los Angeles; Standard Brands named San Francisco contractors as codefendants and filed its complaint in San Francisco; Bryce obtained a change of venue to Los Angeles. Affirming the change of venue, the Supreme Court said: "When, as here, the cause of action has already accrued and the only question for determination is the ultimate liability of one party on account of consequential relief to which another is shown to be entitled, it has been held that the nature of the action is not a cause for declaratory relief but is defined by the subject matter of the accrued cause of action. (See *In re Sterrett's Estate*, 300 Pa. 116 [150 Atl. 159, 162]; *Kaaa* v. *Waiakea Mill Co.*, 29 Hawaii, 122, 127, 128; see, also, notes in 12 A.L.R. 74-76; 50 A.L.R. 43, 44; 68 A.L.R. 119.) These considerations are applicable as well on the questions of the nature of the action and the subject matter of the complaint in determining the defendant Bryces' motion for a change of place of trial. Consequently the plaintiff, by bringing the action itself in anticipation of the defendant Bryces' claim against it, and by joining other defendants upon whom it attempts to fasten the claimed liability and who reside in a county outside the county where the real property is situated, may not deprive the owners of the property of their right to a trial in the county where the real property is located. The plaintiff may not, by this device, choose its own forum and thus evade the statutory provisions which require a trial in Los Angeles County of any cause of action shown by the complaint to have accrued." (1 Cal.2d at pp. 721-722.) Chadbourn and his colleagues doubt the need for and validity of the "'inversion-of-the-parties' approach" and conclude that it "should be discarded." (Chadbourn et al., *op. cit. supra*, § 323, pp. 250-254.) In *Shores*, a Court of Appeal adopted the *Standard Brands* rationale but then apparently applied the wrong venue rule, selecting a rule applicable to corporate defendants although the declaratory relief plaintiff appears to have been an individual. (*Shores* v. *Chip Steak Co., supra*, 130 Cal.App.2d 620, 624, 626.)

The Massaes attempt directly to adopt the *Shores* holding, without adequate consideration to the plain distinction between the trademark dispute in *Shores*, and the power of sale issue in this action or to the fact that none of the relevant parties to this action is a corporation.

Blade and LeClerc, on the other hand, purport to concede that the "'inversion-of-the-parties' approach" applies to *every* declaratory relief action, but argue that the approach would not keep the action in Humboldt County in this case. The concession is improvident. Good or bad, the *Standard Brands* rule is much narrower and should not be applied to this action. The Massaes apparently do not question their underlying obligation to Blade; Blade, on the other hand, is not threatening suit but rather is seeking to employ a nonjudicial mode of enforcement to which judicial venue rules, as such, do not apply.

In any event, the Massaes' complaint obviously seeks considerably more than declaratory relief. As more fully developed below, it seems clear that the "main relief" contemplated by the complaint is reformation of the deed of trust to excise its power of sale. Whether because it would reflect an orthodox application of the "main relief rule" in this action or because it would be a more sensible rule for declaratory relief actions generally, this action should be assessed for venue purposes in terms of its *substance* rather than in terms of its declaratory relief *form.*

### Reformation of the Power of Sale

#### 1. *The "Main Relief"*

Since the complaint states only one cause of action, orthodox analysis requires only that the relief sought on the basis of that cause of action be characterized as local or transitory. The characterization will control the venue issue. If the relief sought is all local or all transitory, the process is relatively simple. But if both local and transitory relief are sought, the overall characterization will be controlled by the nature of "the 'main relief' sought, or 'principal object' of the action." (2 Witkin, *op. cit. supra,* § 424, pp. 1255-1256; cf. *Nelson v. Crocker Nat. Bank, supra,* 51 Cal.App.3d 536, 540-541.) Guidelines for identification of the "main relief" are difficult to find.

If several types of relief are sought, it makes sense *first* to identify the "main relief" sought, and then to concentrate on characterizing only

the "main relief" as local or transitory. If the other relief sought should be characterized differently, the nature of the main relief will control by virtue of the "main relief rule"; if all of the relief should be similarly characterized, the "main relief rule" will not be needed. (Cf. 2 Witkin, *op. cit. supra*, § 424, p. 1255.)

In this action it is easy, with or without guidelines, to conclude that reformation of the deed of trust is the main relief sought. The declaration of rights is simply the theoretical aspect of exactly the same relief. The damages are incidental. And it seems clear that the injunctive relief is also incidental to the long-range goal of eliminating the power of sale.

### 2. *The Power of Sale*

Characterization of the reformation the Massaes seek is difficult. The choice between local and transitory is close; there is apparently no appellate decision in point. The Massaes' best case, *Cohen v. Hellman Commercial T. & S. Bk.* (1933) 133 Cal.App. 758 [24 P.2d 960], simply frames and by no means resolves the inquiry, stating among other things: "As a rule a proceeding to reform a writing is *in personam* and not *in rem*. . . . Nevertheless, where the writing involves the title to real property and the action would determine in some form a right or interest therein, the case is within the provisions of subdivision 1 of section 392 of the Code of Civil Procedure. . . . " (133 Cal.App. at p. 767.)

The Massaes argue that what they seek to reform is an instrument creating a security interest in land, and that for this reason the relief is local for venue purposes. Their approach is too broad. The question is not whether the *document to be reformed* relates to land but rather (under Code Civ. Proc., § 392) whether the *relief sought* amounts to "the determination in any form, of [a] right or interest [in real property]."

Of course the California real property security instrument known as a deed of trust creates rights or interests in real property. (Cf. inter alia, 2 Bowman, Ogden's Revised Cal. Real Property Law (Cont.Ed.Bar 1975) Mortgages and Trust Deeds, § 17.54, pp. 930-931; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Security Transactions in Real Property, §§ 4-9, pp. 1493-1497.) The Supreme Court has said that "[i]t may be conceded . . . that a complaint having for its sole and ex-

clusive object the cancellation of a ... deed of trust for fraud is a local action." (*Howe* v. *Tucker, supra,* 219 Cal. 193, 194 [dictum].)

The complaint in this action makes a narrower attack, striking only at the power of sale *included within* the deed of trust. In *Cohen* v. *Hellman Commercial T. & S. Bk., supra,* certain real property in San Bernardino County was held in trust by the defendant bank, and plaintiff, claiming as a trust beneficiary, sued to terminate the trust. The trustor cross-complained to reform the trust agreement to express the alleged understanding of the parties that the trustor was to receive monthly payments which were to be a charge on the property. The action had been brought in another county; the issue of venue of the cross-complaint was not raised in the trial court and therefore was deemed waived. Thus the *Cohen* court's suggestion, quoted above, that the cross-complaint should be characterized as local is pure dictum. The usefulness of *Cohen* to the Massaes is further attenuated by the fact that the opinion never expressly says that the court deems the quoted language applicable to the facts before it.

The Massaes also rely on two cases cited in *Cohen*; neither gives them measurable help. In *Stanley* v. *Barney* (1932) 123 Cal.App. 139 [10 P.2d 1022], a decedent had deeded certain real property before her death and one of her heirs sued to annul the deed on various grounds. Discussing the venue issue the Court of Appeal concluded, undebatably, that this was "a direct attack upon the title" (at p. 142), and thus a local action under section 392. In *Franklin* v. *Dutton* (1889) 79 Cal. 605 [21 P. 964], the Supreme Court concluded without factual elaboration that an action "for the reformation of a contract for the sale ... of a certain tract of land" was "for the determination ... of a right or interest in real estate" and thus local under section 392. (*Id.,* at pp. 605-606.)

Weak as it is, *Cohen* comes closer to the situation in this action than any other California case. Still the leap from the equitable charge in *Cohen* to the power of sale in this action is a long one. A power of sale is all but invariably included in a California deed of trust, and is still regarded as one of the characteristics (albeit on a relatively superficial level) which distinguishes a deed of trust from a mortgage. (Cf. 2 Bowman, *op. cit. supra,* §§ 17.52-17.54, pp. 929-931.) By virtue of the power of sale, subject to certain statutory limitations (cf. Civ. Code, § 2924a et seq.), a creditor may cause the real property to be sold to satisfy the underlying obligation without recourse to judicial proceed-

ing. (Cf. e.g., 3 Witkin, *op. cit. supra*, §§ 95-97, pp. 1567-1568, § 102 et seq., p. 1571 et seq..) Made of record, this extraordinary power to divest title without right of redemption (cf. 2 Bowman, *op. cit. supra*, § 18.34, p. 963), which will survive even the running of the statute of limitations on the underlying obligation (cf. 2 Bowman, *op. cit. supra*, § 17.53, p. 930; Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § 2.8, pp. 12-13, § 4.14, p. 146), has obvious present impact on marketable title. In any event it has obvious potential impact on the residuary rights and interests of the landowner/trustor, and conversely its abrogation or elimination would have profound practical impact on the creditor's security interest. In this practical light an action to eliminate a power of sale has a real and direct impact on a right or interest in real property.

Blade and LeClerc, in their brief, do not address the power of sale issue squarely, electing instead to argue, spuriously, that the Massaes seek also to reform the underlying written agreement.

In the trial court, Blade and LeClerc relied on statements from two secondary sources to the effect that, in general, an action to reform a trust deed is transitory (11 Cal.Jur.3d, Cancellation and Reformation, § 80, p. 298, fn. 28; 10 Cal. Practice (rev.) pt. I, § 106:7, p. 469, fn. 27) but both footnote a distinguishable case: *San Fernando Valley C. of C. v. Thomas* (1954) 123 Cal.App.2d 348, 350 [266 P.2d 891], which held that such an action did not come within the provisions of the since-repealed constitutional provisions for "jurisdictional venue" of actions "for the recovery of the possession of, quieting title to, or for the enforcement of liens upon real estate. . . ." (Cal.Const., former art. VI, § 5.) The constitutional provision did not in terms extend, as Code of Civil Procedure section 392 does, to "the determination in any form, of [a] right or interest [in real property]," and for this reason *Thomas* is not useful authority in this action; Blade and LeClerc do not cite the case in this court.

At oral argument Blade and LeClerc cited four more cases; the Massaes have responded by letter, concluding correctly that all four are distinguishable. In summary: *Neet v. Holmes* (1942) 19 Cal.2d 605 [122 P.2d 557], appears to involve an orthodox application of the "main relief rule." "[I]t is obvious that the action turns principally on the personal obligation, as distinct from the title, and that judgment for any mining properties not now owned by the plaintiffs would follow if at all,

merely as an incident of the judgment establishing the personal obligation." (19 Cal.2d at p. 612.)

*Peiser* v. *Mettler, supra,* 50 Cal.2d 594, a leading venue case, resolved the local-transitory issue by determining that the property involved had become personal property by virtue of severance from the land; again as in *Neet* (which *Peiser* cited) there was some indication that the Supreme Court simply applied the "main relief rule," finding recovery of the chattels to have been the main relief sought.

*Ponderosa Sky Ranch* v. *Okay Improvement Corp.* (1962) 204 Cal. App.2d 227 [22 Cal.Rptr. 90], was a controversy over obligations secured by interests in real property. Applying the "main relief rule" and citing *Neet,* the Court of Appeal concluded that "[i]f plaintiff is entitled to an adjudication of its interest in the land, this will be only as a form of relief which may follow after plaintiff has established its alleged rights under the personal obligation which is in dispute." (204 Cal.App.2d at p. 231.)

*Jhirmack Enterprises, Inc.* v. *Superior Court* (1979) 96 Cal.App.3d 715 [158 Cal.Rptr. 192], involved multiple causes of action and the "mixed action" rules; it also reiterates the rule that venue of an action to reform a *contract* will be governed by contract-venue rules. *Jhirmack* is not germane.

The present action does not seek to reform the agreement or promissory note. The action does not affect the existence or the amount of the underlying obligation. Only the deed of trust is to be reformed by recission of the power of sale. A power of sale is a right to transfer title without a judicial sale thus an action to eliminate the power has a real and direct impact on a right or interest in the real property. The action is thus "local" and should be tried in the county in which the real property is situated.

Let the peremptory writ issue as prayed.

Christian, J., and Poché, J., concurred.

A petition for a rehearing was denied May 21, 1981, and the petition of real parties in interest for a hearing by the Supreme Court was denied July 3, 1981. Richardson, J., did not participate therein.