134 Cal.Rptr.2d 373 (2003)
108 Cal.App.4th 1003
KIDS AGAINST POLLUTION et al., Plaintiffs and Respondents,
v.
CALIFORNIA DENTAL ASSOCIATION, Defendant and Appellant.
No. A098396.
Court of Appeal, First District, Division Three.
May 21, 2003.
Rehearing Denied June 18, 2003.
Review Granted September 17, 2003.
*375 Law Offices of Shawn Khorrami, Shawn Khorrami, Matt C. Bailey, for plaintiffs and respondents.
Gordon & Rees, LLP, Jewel Rolling Basse, Fletcher C. Alford, San Francisco, Joel K. Liberson, Los Angeles, California Dental Association, Linda J. Seifert, for defendant and appellant.
Fred J. Hiestand, Sacramento, for The Civil Justice Association of California (CJAC), Amicus Curiae on behalf of defendant and appellant.
*374 POLLAK, J.
Defendant California Dental Association (CDA) appeals from the denial of its motion under Code of Civil Procedure section 425.16,[1] commonly known as the anti-SLAPP (strategic lawsuit against public participation) statute, to strike two virtually identical complaints brought against it by several individuals and nonprofit organizations. The complaints allege four causes of action under California's unfair competition law, Business and Professions Code section 17200 et seq. (UCL), each predicated on a different legal theory, challenging an alleged "course of conduct and a business practice spanning over many decades in order to assure that patients do not receive accurate information *376 regarding mercury amalgam fillings."[2] The trial court denied the motion, finding that although the actions arise out of CDA's acts in furtherance of its right of free speech or right of petition, plaintiffs made a prima facie showing that they were likely to prevail in the actions. For the reasons explained below, we conclude that the motion should have been granted.

I. Plaintiffs' Complaints and the Motion to Strike

A. The Complaints

Plaintiffs' complaints allege that mercury is conclusively known to cause adverse health effects in humans, that mercury is the major component of amalgam dental fillings, that mercury vapors constantly emit from amalgam fillings, and that according to the United States Public Health Service, the major cause of mercury toxicity for most people is amalgam fillings. Yet, the complaints allege, the American Dental Association (ADA) and CDA "have, for years, sent out literature, informational materials, advertisements, and other written correspondence, and also made oral representations, all of which were deliberately intended to disguise mercury amalgam fillings as silver. The ADA and CDA have concealed and provided false information to their members and the general public regarding the significant risk of harm and toxic injury from such fillings to consumers, and dental practitioners.... [¶] ... This deception takes the form of concealment, openly false representations, and an outward aggression toward those who do not agree with the Defendants. It is layer upon layer of actions by the Defendants from their pamphlets and other written and oral materials, to accreditation of dental schools, to revocation of licenses of those dentists who oppose the Defendants' position."
More specifically, the complaints allege deceptive conduct "in at least seven distinct categories," namely: falsely representing that amalgam is silver in brochures distributed to the public, hiding the existence of mercury in dental fillings from the public by telling dentists to avoid using the word "mercury" in their disclosures to patients, hiding the ADA's economic stake in amalgam sales by failing to disclose the revenues ADA receives from manufacturers for issuing its "Seal of Acceptance" for amalgam products, hiding the controversy about the health effects of mercury, "gag[ging] dentists who believe amalgam is dangerous" "through the guise of so-called `ethical' rules" which prevent dentists "from informing patients of the dangers of mercury by pronouncing as `unethical' the practice of even suggesting the removal of amalgam due to their toxicity," hiding the dangerous environmental impact of amalgam from the public by using a "powerful lobbying presence" to secure administrative orders freeing dentists from accountability for the environmental impact of amalgam, and creating a third-party reimbursement program (Delta Dental Plans) which favors the use of amalgam. While many of these allegations relate primarily if not exclusively to ADA, which did not join in the anti-SLAPP motion and is not a party to the appeal, CDA is alleged to be directly responsible for the public distribution of false information concerning amalgam and for the enforcement of the rule of ethics that plaintiffs challenge.
*377 The complaints allege that "Defendants, and each of them, have undertaken ... a policy and practice, as manifested in their so-called `ethical' rules, to prevent warnings and information regarding mercury from reaching the exposed population, namely the patients," and have "retaliated against dentists who disclose to their patients the toxicity of mercury by causing the enforcement of their gag rules." One cause of action, the second, alleges that this conduct violates the UCL because it contravenes Business and Professions Code section 510, which is designed to "provide protection against retaliation for health care practitioners who advocate for appropriate health care for their patients" (id., subd. (a)) and declares it to be a violation of the public policy of this state to "penalize a health care practitioner principally for advocating for appropriate health care consistent with that degree of learning and skill ordinarily possessed" by qualified reputable practitioners (id., subd. (c))[3]. The third cause of action, also under the UCL, alleges that these same practices violate Business and Professions Code section 2056, which is similar to section 510 except that it applies specifically to physicians and surgeons.[4]
The fourth cause of action bases the asserted UCL violation upon the allegation that all of the practices described in the complaints violate the public policy expressed in the Health and Safety Code "that the public should be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm ... and that such exposures must be eliminated wherever and whenever possible."[5] Finally, the fifth cause of action alleges that defendants'"representations through their correspondence, brochures, literature, their so-called `ethical' rules, and actions, both express and implied, that amalgam is safe for use and that there is no health concern related thereto" are false and that such public deception constitutes an unfair and deceptive practice within the meaning of the UCL.
The prayer of both complaints seeks restitution and attorney fees, and an injunction prohibiting CDA from "[disseminating false, misleading, and inaccurate information as set forth in Defendants' written materials regarding the existence and toxicity of mercury in dental amalgam without first providing, to consumers and users, and other individuals who come into contact with such amalgams," and from "[referring to mercury amalgam fillings *378 as `silver.'" The prayers also request an order requiring CDA "to provide clear and reasonable warnings to consumers and dental professionals, that the amalgam cause[s] exposure to Mercury and Mercury Compounds, chemicals known to the State of California to be reproductive and/or developmental toxins, and which are neurotoxins, and are associated with a host of other adverse health effects" and requiring it to remove from its "ethical rules any rule that prohibits a dental professional from discussing with his or her patients the risks and efficacies of mercury amalgam fillings...."[6]

B. The Special Motion to Strike

Within the time limits prescribed by section 425.16, subdivision (f), CDA moved to strike the consolidated complaints under the anti-SLAPP statute. CDA argued that it is a nonprofit professional organization that has no financial interest in the manufacture or sale of dental amalgam, and that it was being sued solely for disseminating information "to the public and to dentists regarding an important public health issue within its area of expertise the safety of dental amalgam." Based in part upon studies conducted by the Dental Board of California and the United States Department of Health and Human Services, its position as reflected in the literature it distributed "is that no valid scientific evidence exists that dental amalgam poses any health risksother than rare, localized allergic reactions. Thus no medical reason exists for dental patients to spend thousands of dollars to have functional dental amalgam removed or to avoid having the material placed in their mouths as part of normal dental treatment." CDA argued that the complaints should be stricken because they arise from the exercise of its constitutional right of free speech in connection with an issue of public interest. Further, it argued that plaintiffs could not satisfy their burden of demonstrating a probability they would prevail because all of CDA's communications were privileged under Civil Code section 47, subdivision (c) and because its conduct in distributing literature concerning dental amalgam "constitutes classic, non-commercial free speech, and cannot in any way be characterized as a `business act or practice' " within the meaning of Business and Professions Code section 17200.
In opposition, plaintiffs contended that their complaints do not address "the CDA's advocacy of its position on amalgam, unsupportable as it may be," but are directed only to CDA's alleged suppression of dentists' ability to discuss the risks of amalgam with their patients, and most specifically the enforcement of advisory opinion No. 5.A.1 of the "Principles of Ethics and Code of Professional Conduct" (hereafter, the advisory opinion) adopted by the ADA.[7] Section 5.A of these principles states simply that "[d]entists shall not represent the care being rendered to their patients in a false or misleading manner." The advisory opinion reads as follows: "Based on available scientific data[,] the ADA has determined ... that the removal of amalgam restorations from the non-allergic patient for the alleged purpose of removing toxic substances from the body, when such treatment is performed solely *379 at the recommendation or suggestion of the dentist, is improper and unethical."
Plaintiffs' papers opposing the motion to strike contain a single illustration of the enforcement conduct by CDA which they challenge. Plaintiffs' opposition contains an affidavit from Dr. William Domb to which is attached a letter addressed to him from the Ethics Committee of the Tri-County Dental Society, a constituent of CDA. During the course of a televised interview on another subject, Dr. Domb mentioned that he did not use amalgam in dental restorations. The CDA Judicial Council assertedly asked the ethics committee of his local dental society to look into the matter, and the committee subsequently advised Dr. Domb that his comments might imply that the practices of other dentists who use amalgam are unsafe. While the committee found that the interview involved no "unethical advertising," they asked Dr. Domb to "exercise caution when expressing your personal comments in public forums" and stated that "[w]hile you are surely entitled to express your opinions, inappropriately alarming claims about a restorative procedure deemed safe and effective would seem to be imprudent." Dr. Domb "found the letter threatening and a clear indication that any statement that I make insinuating that I do not use amalgam restoration could subject me to discipline."
In denying the motion to strike, the trial court found "that Plaintiffs' lawsuits arise out of Defendant's acts in furtherance of its right of free speech or right of petition. However, ... Plaintiffs have made a prima facie case relating to amalgam's safety, and have established that there is a probability that Plaintiffs will prevail on their claim.... See Church of Scientology of Calif, v. Wollersheim, 42 Cal.App.4th 628, 654, 49 Cal.Rptr.2d 620 (1996)." CDA has timely appealed from the denial, as it is entitled to do under section 425.16, subdivision (j).

II. Analysis

A. The Scheme of the Anti-SLAPP Statute

The scope and interpretation of section 425.16 are the subject of a recent trilogy of cases decided by our Supreme Court. (Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 124 Cal.Rptr.2d 507, 52 P.3d 685 (Equilon); City of Cotati v. Cashman (2002) 29 Cal.4th 69, 124 Cal. Rptr.2d 519, 52 P.3d 695 (City of Cotati); Navellier v. Sletten (2002) 29 Cal.4th 82, 124 Cal.Rptr.2d 530, 52 P.3d 703 (Navellier).) As summarized by the Supreme Court, "Section 425.16 provides, inter alia, that A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) `As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law....' (Id., subd. (e).)" (Navellier, supra, 29 Cal.4th at pp. 87-88, 124 Cal.Rptr.2d 530, 52 P.3d 703.) The other two definitions of covered acts described in subdivision (e) of section *380 425.16, not directly relevant to the decision in Navellier, are: "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."
"Section 425.16 posits," the court continued in Navellier, "a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) `A defendant meets this burden by demonstrating that the act underlying the plaintiffs cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); see generally, Equilon, supra, 29 Cal.4th at p. 67, 124 Cal.Rptr.2d 507, 52 P.3d 685.)[¶] ... [¶] In deciding whether the initial `arising from' requirement is met, a court considers `the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (Navellier, supra, 29 Cal.4th at pp. 88-89, 124 Cal.Rptr.2d 530, 52 P.3d 703.)
"[T]he arising from requirement is not always easily met. [Citations.] The only means specified in section 425.16 by which a moving defendant can satisfy the requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, `act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'" (Equilon, supra, 29 Cal.4th at p. 66, 124 Cal.Rptr.2d 507, 52 P.3d 685.) The cases have made clear that the "arising from" requirement is not satisfied by showing that the challenged suit merely followed in time, or even that it was in response to or motivated by, the conduct which the suit challenges. "[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity." (Ibid.) Nor is it necessary, or sufficient, that the action was brought with the intent to "chill" the conduct against which it is directed. (Ibid; City of Cotati, supra, 29 Cal.4th at p. 74, 124 Cal.Rptr.2d 519, 52 P.3d 695.) Rather, "the statutory phrase `cause of action ... arising from' means simply that the defendant's act underlying the plaintiffs cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiffs cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (City of Cotati, supra, at p. 78, 124 Cal.Rptr.2d 519, 52 P.3d 695, italics in original; Navellier, supra, 29 Cal.4th at p. 89, 124 Cal.Rptr.2d 530, 52 P.3d 703.)

B. The Fourth and Fifth Causes of ActionChallenging CDA's Public Statements

1. What is the Standard for Determining Whether a Cause of Action Alleging Both Protected and Nonprotected Activity is "Based on" Conduct in Furtherance of Protected Rights?

CDA unquestionably is correct that in opposing the special motion to strike in the trial court and on appeal, plaintiffs have mischaracterized their own pleadings. *381 Plaintiffs argue that none of their causes of action challenge CDA's public advocacy of the safety of dental amalgam. This may be true of the second and third causes of action, which focus on CDA's enforcement of the advisory opinion. The fourth and fifth causes of action, however, challenge the lawfulness not only of this ethical proscription, but also of CDA's distribution of brochures and other public statements which plaintiffs claim deceive the public concerning the health effects of dental amalgam.
The fourth cause of action is based upon the asserted violation of public policy to inform members of the public of exposure to dangerous chemicals, and alleges that "through their actions and omissions, including, but not limited to, their seal of approval, their brochures, and their so-called `ethical' rules, both written and oral, Defendants, and each of them, have concealed or otherwise understated the adverse health effects of mercury, and dental amalgam...." (Italics added.) The fifth cause of action is based expressly on the allegation that "Defendants, and each of them, willfully and intentionally attempted to deceive and/or deceived the general public and Plaintiff by making false statements and/or omissions regarding dental amalgam...."
To the extent that the fourth and fifth causes of action attack the public expression by the CDA of its views concerning the safety of dental amalgam, they arise at least in part out of conduct in furtherance of CDA's right of free speech as defined in section 425.16, subdivision (e)(3) ("any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest") or, at a minimum, subdivision (e)(4) ("any other conduct in furtherance of the exercise of ... the constitutional right of free speech in connection with a public issue or an issue of public interest"). CDA's public pronouncements addressing the controversy over the assertedly widespread health effects of the mercury contained in dental amalgam undoubtedly concern an issue of public importance. (Damon v. Ocean Hills Journalism Club (2000) 85 Cal. App.4th 468, 479, 102 Cal.Rptr.2d 205; DuPont Merck Pharmaceutical Co. v. Superior Court (2000) 78 Cal.App.4th 562, 567, 92 Cal.Rptr.2d 755.) And while the extent of the constitutional protection afforded these statements may turn on whether they are in fact false and misleading, as plaintiffs allege, the statements nonetheless come within the threshold definition contained in the anti-SLAPP statute. (Fox Searchlight Pictures, Inc. v. Paladino (2001) 89 Cal.App.4th 294, 305, 106 Cal.Rptr.2d 906 (Fox Searchlight); DuPont Merck Pharmaceutical Co. v. Superior Court, supra, 78 Cal.App.4th at p. 566, 92 Cal.Rptr.2d 755.)
Section 425.16 requires separate consideration of each cause of action (ComputerXpress, Inc. v. Jackson (2001) 93 Cal. App.4th 993, 1004, 113 Cal.Rptr.2d 625; Shekhter v. Financial Indemnity Co. (2001) 89 Cal.App.4th 141, 150, 106 Cal. Rptr.2d 843), but the special motion to strike may not parse any finer. Unlike conventional motions to strike under sections 435 and 436, the court has no authority under section 425.16 to strike particular allegations. (Fox Searchlight, supra, 89 Cal.App.4th at p. 308, 106 Cal.Rptr.2d 906; cf. M.G. v. Time Warner, Inc. (2001) 89 Cal.App.4th 623, 627-628, 107 Cal.Rptr.2d 504 ["the anti-SLAPP statute allows a motion to strike to be made against only a cause of action, not a cause of action as it applies to an individual plaintiff']; Simmons v. Allstate Ins. Co. (2001) 92 Cal. App.4th 1068, 1073, 112 Cal.Rptr.2d 397 [procedurally, SLAPP motion more closely *382 resembles motion for summary judgment than demurrer or motion to strike].)
The case law to date furnishes little guidance as to the proper treatment of mixed causes of action. In M.G. v. Time Warner, Inc., supra, each of the plaintiffs challenged the same conduct by the defendants in publishing and broadcasting on the topic of child molestation, although the strength of their individual invasion of privacy claims differed. Since all of the defendants' challenged conduct was in furtherance of their right of free speech, it was necessary for plaintiffs to demonstrate a reasonable probability of success in order to defeat the special motion to strike. Because the court held "the cause of action for invasion of privacy is valid as to some plaintiffs, for purposes of the anti-SLAPP motion," the court "deem[ed] it sound as to all plaintiffs." (89 Cal.App.4th at p. 628, 107 Cal.Rptr.2d 504; see ComputerXpress, Inc. v. Jackson, supra, 93 Cal.App.4th at p. 1004, 113 Cal.Rptr.2d 625.)
The only case which our research has disclosed dealing explicitly with a section 425.16 motion directed against a cause of action arguably based both upon protected and nonprotected activity is Fox Searchlight, supra. There, a complaint was brought by Fox Searchlight Pictures, Inc. (Fox) against a former in-house attorney who was preparing to sue it for wrongful termination. Fox alleged that the in-house attorney had breached her ethical and fiduciary obligations to the company by disclosing confidential information to her own attorney in preparation for the suit. In opposing an anti-SLAPP motion brought by the former in-house attorney, Fox argued, among other things, that regardless of the fact that these prior disclosures were made in preparation for suit (and thus were in furtherance of the attorney's right of petition within the meaning of section 425.16, subdivision (e), clauses (2) & (4)), Fox's complaint also sought to compel the attorney to return the confidential material she was still holding, and that retaining confidential material of others is not a protected activity. Since each cause of action alleged the wrongful retention of these materials, Fox argued that "each cause of action is immune from a motion to strike under the SLAPP statute." (Fox Searchlight, supra, 89 Cal.App.4th at p. 308, 106 Cal.Rptr.2d 906.) The court rejected this contention, making two observations. First, it could not "say from the record before us, as a matter of law, the maintenance of this material was not an act in furtherance of the preparation and prosecution of [the in-house attorney's] suit against Fox. [Footnote omitted.] Furthermore, a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one `cause of action.'" (Ibid.)
The court's first observation indicates that even the retention of the confidential materials came within subdivision (e)(4) of section 425.16, so that the case did not truly involve both protected and nonprotected activity. But it is the second observation that has broader implications. We agree that a plaintiff should not be able to "immunize" a cause of action challenging protected free speech or petitioning activity from a special motion under section 425.16 by the artifice of including extraneous allegations concerning nonprotected activity. When allegations of nonprotected activity are collateral to a plaintiffs claim challenging primarily the exercise of the rights of free speech or petition, they may be disregarded in determining whether the cause of action arises from protected activity, as they were in Fox Searchlight, supra, 89 Cal.App.4th 294, 106 Cal.Rptr.2d 906. (Cf. Bacon v. Wahrhaftig (1950) 97 Cal.App.2d 599, 605, *383 218 P.2d 144 [allegations referring to immaterial matters "will be treated as surplusage and disregarded"].) But in determining whether a complaint challenges conduct arising out of the exercise of the constitutional rights of petition or free speech, the defendant's protected conduct must be the "gravamen" of the plaintiffs cause of action. (City of Cotati supra, 29 Cal.4th at p. 79, 124 Cal.Rptr.2d 519, 52 P.3d 695.) If the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity should not subject the cause of action to an anti-SLAPP motion. As in other contexts in which it is necessary to evaluate the principal thrust of a mixed cause of action,[8] the court must evaluate the significance of the particular allegations to the cause of action that has been pleaded, bearing in mind that the Legislature has amended the statute to provide explicitly that "this section shall be construed broadly." (§ 425.16, subd. (a); Stats.1997, ch. 271, § 1.)
While plaintiffs' allegations concerning the enforcement of the advisory opinion are woven into the fourth and fifth causes of action, as pleaded these causes of action are also based in significant part on the allegedly false and misleading dissemination of public statements concerning the safety of dental amalgam. These allegations are not merely collateral or surplussage, and they cannot be ignored in determining whether the threshold has been crossed to invoke scrutiny under section 425.16.
In opposing the anti-SLAPP motion, plaintiffs have disavowed any intention of seeking any form of relief concerning CDA's distribution of literature or the public assertion of its position concerning the safety of dental amalgam, and we may assume that the trial court would hold plaintiffs to their word. Nonetheless, permitting the plaintiffs to remove their complaints from the scope of section 425.16 by withdrawing allegations in the face of an anti-SLAPP motion would be inconsistent with the decision in Simmons v. Allstate Ins. Co., supra, that leave to amend to delete allegations from a complaint may not be granted "once the court finds the requisite connection to First Amendment speech." (92 Cal.App.4th at p. 1073, 112 Cal.Rptr.2d 397; see also Roberts v. Los Angeles County Bar Assn. (2003) 105 Cal. App.4th 604, 612-613, 129 Cal.Rptr.2d 546 [same rule when appeal taken from denial of motion to strike].)[9] Such a result *384 would also be inconsistent with the cases that have held that a plaintiff may not escape its liability for an award of attorney fees under section 425.16, subdivision (c) by voluntarily dismissing a complaint filed against a defendant in violation of the defendant's free speech rights. (Pfeiffer Venice Properties v. Bernard (2002) 101 Cal.App.4th 211, 123 Cal.Rptr.2d 647; Kyle v. Carmon (1999) 71 Cal.App.4th 901, 84 Cal.Rptr.2d 303; Liu v. Moore (1999) 69 Cal.App.4th 745, 81 Cal.Rptr.2d 807.)
Since the fourth and fifth causes of action unquestionably are based in significant part on activity in furtherance of CDA's right of free speech, even if those causes of action are also based in part on activity that is not so protected, the burden shifts to the plaintiffs to make a prima facie showing of the merit of their claims.

2. Plaintiffs Cannot Prevail on the Fourth and Fifth Causes of Action, Which Therefore Must Be Dismissed.

Section 425.16, subdivision (b)(1) provides that a motion to strike under that section, challenging a cause of action arising from an act in furtherance of the rights of petition or free speech, shall be granted "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Although the statute speaks of the plaintiff establishing a "probability" of success, a judicial gloss has been placed on the statutory language, and is now firmly established. "In order to establish a probability of prevailing on the claim [citation], a plaintiff responding to an anti-SLAPP motion must "`state[] and substantiate[] a legally sufficient claim.'" [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiffs attempt to establish evidentiary support for the claim.'" (Roberts v. Los Angeles County Bar Assn., supra, 105 Cal.App.4th 604, 616, 129 Cal. Rptr.2d 546, quoting Wilson v. Parker, Covert & Chidester (2002) 28 Cal.4th 811, 821, 123 Cal.Rptr.2d 19, 50 P.3d 733.) "The burden on the plaintiff is similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment." (Kyle v. Carmon, supra, 71 Cal.App.4th at p. 907, 84 Cal.Rptr.2d 303.) We conduct a de novo review of the trial court's determination on this issue. (M.G. v. Time Warner, Inc., supra, 89 Cal. App.4th at p. 629, 107 Cal.Rptr.2d 504.)
In concluding that plaintiffs had made a sufficient showing to overcome the motion, the trial court apparently relied upon the *385 expert evidence submitted by plaintiffs that creates a triable issue as to whether the mercury in dental amalgam poses a risk to the health of the patient. The sufficiency of this factual issue to defeat the motion is disputed by CDA on three grounds, the principal contention being that its public statements concerning the safety of amalgam constitute an exercise of its right of free speech which is not subject to prior judicial restraint, whether its views are right or wrong.[10] Plaintiffs respond with the contention that CDA's statements constitute commercial speech which, if false, is not entitled to constitutional protection. (E.g., Bolger v. Youngs Drug Products Corp. (1983) 463 U.S. 60, 64-65, 103 S.Ct. 2875, 77 L.Ed.2d 469; National Com'n Egg Nutrition v. F.T.C. (7th Cir.1978) 570 F.2d 157.) However, in the present posture of this case, it is not necessary to decide whether CDA's public statements concerning the safety of dental amalgam are or are not commercial speech under the recent decision of the California Supreme Court in Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 119 Cal.Rptr.2d 296, 45 P.3d 243, cert, granted 537 U.S. 1099, 123 S.Ct. 817, 154 L.Ed.2d 767 (2003), or to speculate whether the United States Supreme Court will adhere to the standards articulated in that opinion.
While plaintiffs' complaints sought to prohibit CDA from disseminating materials allegedly deceiving the public into believing that dental amalgam is safe, both in the trial court and on appeal plaintiffs subsequently have disavowed any claim that CDA should be restricted in the views it expresses concerning the safety of amalgam. In their opposition to the special motion before the trial court, plaintiffs argued: "In the instant lawsuits, Plaintiffs are not making claims based on Defendants' lobbying of a legislative, or regulatory body; they are not challenging any petitions filed by Defendants with any legislative, regulatory, or judicial [sic]; Defendants are not being sued for their press releases, or their internet bulletins, or their advertising, marketing, or public relations .... Simply put, the opinions of the CDA and ADA are not the subject of Plaintiffs' lawsuits. In fact, Plaintiffs invite both Defendants herein to continue to express their opinions. They must, however, cease gagging the scientific research of others and discontinue preventing important health information from reaching California consumers from the manufacturers and dentists." Plaintiffs state repeatedly to this court that they seek only "to enjoin [CDA] from maintaining ethical rules that preclude the dissemination of material health warnings regarding amalgam to dental patients" and that they do "not seek to prevent [CDA] from communicating its message that it believes that amalgam is safe." Plaintiffs begin the *386 summary of their argument here as follows: "[CDA] does much to frame the instant lawsuit as relating to its advocacy of amalgam. This confuses the issue. It is important to distinguish between [CDA]'s advocacy on the one hand, and its conduct in precluding warnings from reaching the consumer on the other. [Plaintiffs]' lawsuit is not based on [the] former; it is based on the latter."
Since plaintiffs have effectively withdrawn their claim that CDA's distribution of literature and dissemination of public statements should be enjoined because the information which they contain is false, plaintiffs obviously will not prevail upon such a claim, regardless of the merits of their position concerning commercial free speech or concerning any of CDA's other contentions. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 597, pp. 631-632; Browne v. Superior Court (1940) 16 Cal.2d 593, 107 P.2d 1.) Because plaintiffs necessarily will not prevail upon a claim they have withdrawn, the special motion to dismiss the fourth and fifth causes of action should have been granted.
This result follows from the conclusion above that a plaintiff may not amend its pleading to avoid an anti-SLAPP motion. Because the plaintiffs included in their fourth and fifth causes of action material allegations concerning CDA's dissemination of views which they sought to restrict, those causes of action came within the scope of section 425.16, subdivision (b). Faced with a special motion to dismiss, plaintiffs could not remove the causes of action from the reach of the statute by attempting to narrow or amend their complaints. Neither can they avoid the necessity of establishing a probability of prevailing by withdrawing their challenge to the protected activity and limiting their attack to nonprotected activity.
The upshot of this analysis accords with the legislative objective of section 425.16, to provide a prompt and efficient method of disposing of unmeritorious claims challenging the exercise of constitutionally protected rights, without permitting special motions to strike to preempt other procedures specified in the Code of Civil Procedure for challenging the sufficiency of all other claims. Our approach encourages the party filing a complaint to consider carefully at the outset whether to include an attack on the exercise of the First Amendment rights the Legislature sought to protect by the enactment of section 425.16. Here, the fourth and fifth causes of action as filed sought in significant part to restrict CDA's public pronouncements on the health effects of dental amalgam. These causes of action attacked CDA's constitutionally protected right of speech and, plaintiffs having failed to show a likelihood of prevailing on these claims, the causes of action must be dismissed.

C. The Second and Third Causes of Action Challenging Enforcement of the Advisory Opinion Also Must Be Dismissed

As plaintiffs have narrowed their contentions, the thrust of their case is now contained in their second and third causes of action, which challenge CDA's enforcement of the Principles of Ethics and Code of Professional Conduct and the accompanying advisory opinion that has been issued by the ADA. The initial question is whether the defendant has met its burden of demonstrating that the conduct underlying these causes of action falls within one of the categories specified in section 425.16, subdivision (e). While it is not necessary for the defendant to establish that it will ultimately prevail in the action, in order to invoke the statute the defendant must at least show that there is a colorable and good faith argument that the *387 conduct being challenged is in furtherance of the constitutional right of petition or free speech. (Fox Searchlight, supra, 89 Cal.App.4th at p. 305, 106 Cal.Rptr.2d 906; M.G. v. Time Warner, Inc., supra, 89 Cal. App.4th at p. 628, 107 Cal.Rptr.2d 504; DuPont Merck Pharmaceutical Co. v. Superior Court, supra, 78 Cal.App.4th at p. 566, 92 Cal.Rptr.2d 755.)
CDA's conduct in enforcing the challenged rule of professional conduct does not come within the description of any of the activities described in the first three numbered clauses of section 415.26, subdivision (e). This conduct did not involve the making of any statements before or in connection with an issue under consideration or review by a legislative, executive, judicial or other official proceeding authorized by law; nor did it involve the making of statements in a place open to the public or in a public forum. If the challenged conduct invokes section 425.16, that can only be because it comes within the fourth clause of subdivision (e), added by a 1997 amendment to the statute: it must be "other conduct in furtherance of the exercise of the rights of petition or free speech in connection with a public issue or an issue of public interest. (Stats.1997, ch. 271, § 1.)
There are very few cases that have considered the scope of this clause. One of the few is the recent decision in Roberts v. Los Angeles County Bar Assn., supra, 105 Cal.App.4th 604, 129 Cal.Rptr.2d 546. In that case the plaintiff sued her local bar association for breach of contract and fraud because of a "not qualified" rating she received as a candidate for judicial office. There was no question that the evaluation itself was protected speech, but plaintiff contended that her complaint challenged only the process by which the association reached its evaluation and therefore did not come within the scope of section 425.16. The court rejected this argument, citing subdivision (e)(4) and observing that "[t]he statute defines an `act in furtherance' as including `any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" (Roberts v. Los Angeles County Bar Association, supra, at p. 614, 129 Cal.Rptr.2d 546.) The court held that although plaintiffs "action was an attack on the process of the evaluations, that process was inextricably intertwined with and part and parcel of the evaluations. Thus, the action arose from the Bar Association's exercise of its constitutional right of free speech in connection with a public issue." (Id. at p. 615, 129 Cal.Rptr.2d 546.) We have no hesitation in agreeing with the Roberts court that subdivision (e)(4) of section 425.16 encompasses conduct that is carried out for the purpose of petitioning the government or exercising the right of free speech and is necessary to engage in such protected activityi.e., conduct that is in furtherance of the activity described in the first three clauses of subdivision (e). (See also Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1420, 103 Cal.Rptr.2d 174 [conduct within definition of subds. (e)(2) & (e)(4) of § 425.16]; Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist. (2003) 106 Cal.App.4th 1219, 132 Cal.Rptr.2d 57 [communication to city and others regarding prospective large scale development within definition of subd. (e)(4) ]; cf. Fox Searchlight, supra, 89 Cal.App.4th at p. 308, 106 Cal.Rptr.2d 906.) Indeed, even prior to the addition of subdivision (e)(4), the statute was interpreted by some courts to encompass conduct supporting protected activity engaged in by others (see Ludwig v. Superior Court (1995) 37 Cal. App.4th 8, 17-18, 43 Cal.Rptr.2d 350) and this interpretation was explicitly endorsed *388 by the Legislature when the statute was amended. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1296 (1997-1998 Reg. Sess.) as amended Jun. 23, 1997.)
Subdivision (e), clause (4) of section 425.16 should also be read to encompass another type of conduct: nonverbal activities that are communicative in nature and therefore protected by the constitutional right of free speech. (M.G. v. Time Warner, Inc., supra, 89 Cal.App.4th at p. 629, 107 Cal.Rptr.2d 504 [photograph printed in magazine and shown in television report]; see also Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 821, 33 Cal.Rptr.2d 446, disapproved on other grounds in Equilon, supra, 29 Cal.4th at p. 68, fn. 5, 124 Cal.Rptr.2d 507, 52 P.3d 685 [a constitutionally protected economic boycott would satisfy the first step of the anti-SLAPP analysis[11]].) Other such protected expressive activities include parading (Edwards v. South Carolina (1963) 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697); political boycotting (NAACP v. Claiborne Hardware Co. (1982) 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215); displaying a red flag (Stromberg v. California (1931) 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117); and flag burning (United States v. Eichman (1990) 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287; Texas v. Johnson (1989) 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342). Although not necessarily involving written or oral statements coming within clauses (1), (2) or (3) of subdivision (e), these essentially communicative activities nonetheless are "other conduct in furtherance of the exercise of the constitutional right of ... free speech." Including such conduct within the scope of section 425.16 is fully consistent with the objectives of the statute. "[The] enduring lesson, that the government may not prohibit expression simply because it disagrees with its message, is not dependent on the particular mode in which one chooses to express an idea." (Texas v. Johnson, supra, 491 U.S. at p. 416,109 S.Ct. 2533.)
The dissemination of standards of practice by a voluntary professional organization constitutes an exercise of the right of free speech every bit as much as the various forms of protest involved in many of these cases. The public expression of what a professional organization considers to be proper or improper conduct must "in a fair analysis, be characterized as `communicative.'" (Ludwig v. Superior Court, supra, 37 Cal.App.4th at pp. 19-20, 43 Cal.Rptr.2d 350.) It is true, of course, that such a right is not absolute, and if abused may run afoul of other legal restrictions which may outweigh First Amendment interests. (National Soc. of Professional Engineers v. U.S. (1978) 435 U.S. 679, 697-698, 98 S.Ct. 1355, 55 L.Ed.2d 637 ["Just as an injunction against price fixing abridges the freedom of businessmen to talk to one another about prices, so too the injunction in this case must restrict the Society's range of expression on the ethics of competitive bidding"]; Giboney v. Empire Storage Co. (1949) 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834 [First Amendment does not prohibit injunction against picketing as part of boycott in violation of antitrust laws]; but cf. California Dental Assn. v. FTC (1999) 526 U.S. 756, 119 S.Ct. 1604, 143 L.Ed.2d 935 [prohibition of false advertising by *389 CDA does not necessarily violate antitrust laws].) Nonetheless, were plaintiffs' claims directed against the very issuance of the advisory opinion, the questioned conduct would come within subdivision (e)(4), if not (e)(3), and would cross the threshold invoking scrutiny under the anti-SLAPP statute. (Fox Searchlight, supra, 89 Cal.App.4th at p. 305, 106 Cal.Rptr.2d 906; M.G. v. Time Warner, Inc., supra, 89 Cal.App.4th at p. 628, 107 Cal.Rptr.2d 504; DuPont Merck Pharmaceutical Co. v. Superior Court, supra, 78 Cal.App.4th at p. 566, 92 Cal.Rptr.2d 755.)
Plaintiffs argue that the conduct of CDA that is challenged in the second and third causes of action is not the adoption of the advisory opinion, but its enforcement. These causes of action are grounded on the allegation that the defendants are violating provisions of the Business and Professions Code making it contrary to the public policy of this state to "terminate, retaliate against, or otherwise penalize ... prohibit, restrict, or in any way discourage" health care providers for advocating appropriate health care. (§§ 510, 2056.) The causes of action allege that defendants have "prevented and continue to prevent dentists from even suggesting the removal of dental amalgam based on its toxicity" and that they "have otherwise retaliated against dentists who disclose to their patients the toxicity of mercury by forcing the enforcement of their gag rules." Nonetheless, in determining whether these claims arise from conduct in furtherance of protected activity for purposes of an anti-SLAPP motion, the court must consider not only the pleadings but the factual showing made in support of and in opposition to the special motion to dismiss. (Navellier, supra, 29 Cal.4th at pp. 88-89, 124 Cal.Rptr.2d 530, 52 P.3d 703.) Despite the pejorative allegations in the complaint, accusing CDA of "preventing" dentists from speaking to their patients and "retaliating" against those who do, the factual showing made by plaintiffs in opposition to the motion reflects nothing resembling such conduct.
The only specific instance of alleged enforcement of the advisory opinion to which plaintiffs referred in either their complaints or their papers opposing the special motion to strike is the incident involving Dr. Domb. However, Domb's declaration contains no indication that CDA has done anything to prevent him from speaking to his patients or to others, much less that he has been subjected to any form of retaliation. An investigation was apparently conducted by Domb's local dental society to determine whether he had engaged in unethical advertising; Domb was exonerated, but was advised to exercise caution when speaking in public and told that making "inappropriately alarming claims about a restorative procedure deemed safe and effective would seem to be imprudent." Giving such advice, however, without more, involves nothing beyond the exercise of the association's right to express its views. While Domb may have considered the letter he received from the society to be "threatening," his subjective interpretation adds nothing to what the evidence shows that the dental society actually did. Based on the complete record before the court on the special motion to strike, the second and third causes of action are supported by nothing more than CDA's adherence to the ethical views formulated by the ADA. The broad conclusory allegations of more extreme conduct, which might present different considerations, were not substantiated by plaintiffs' evidence and must be disregarded.[12] So viewing these causes of *390 they too challenge nothing other than CDA's protected right to speak out on the amalgam controversy, and they too were required to be dismissed unless plaintiffs made the necessary prima facie showing that they would prevail on these claims.
The Domb declaration also contains the only factual showing plaintiffs made that CDA has engaged in unlawful methods of enforcing the advisory opinion. And, for the very same reasons, this lone declaration fails to carry the plaintiffs' burden. As indicated in the discussion concerning the fourth and fifth causes of action, plaintiffs have disclaimed any intention to prohibit CDA from publicly expressing its views concerning the safety of dental amalgam, so that there is no need to consider whether its views are right or wrong or whether the expression of those views constitutes commercial or noncommercial speech. And, since the Domb declaration evidences no conduct by CDA other than expressing its agreement with the ethical views articulated by the ADA, there is no evidence of any conduct that might entitle plaintiffs to prevail on their second or third causes of action. Hence, CDA's motion should have been granted with respect to these causes of action as well, despite the existence of a genuine controversy concerning the safety of dental amalgam.

Disposition
The order denying the special motion to strike is reversed and the matter remanded with instructions to grant the motion and dismiss the actions against CDA.
We concur: McGUINESS, P.J., and PARRILLI, J.
NOTES
[1] All statutory references are to the Code of Civil Procedure, unless otherwise indicated.
[2] The complaints each contained a first cause of action under the UCL and Proposition 65 (Health & Saf.Code, § 25249.6), but that cause of action was settled and is not before this court on appeal. The complaints also named the American Dental Association as a defendant, but this association is not before the court on appeal.
[3] Business and Professions Code section 510, subdivision (c) reads as follows: "The application and rendering by any individual, partnership, corporation, or other organization of a decision to terminate an employment or other contractual relationship with or otherwise penalize a health care practitioner principally for advocating for appropriate health care consistent with that degree of learning and skill ordinarily possessed by reputable health care practitioners with the same license or certification and practicing according to the applicable legal standard of care violates the public policy of this state."
[4] Business and Professions Code section 2056, subdivision (c) also contains the explicit prohibition that "No person shall terminate, retaliate against, or otherwise penalize a physician and surgeon for that advocacy, nor shall any person prohibit, restrict, or in any way discourage a physician and surgeon from communicating to a patient information in furtherance of medically appropriate health care." Thus far in the litigation, there has been no occasion to consider whether section 2056 has any application to dentists.
[5] The first cause of action was based explicitly upon the failure to provide warnings required by Proposition 65, Health and Safety Code section 25249.6. We have no occasion to consider whether the terms of the partial settlement agreement removing this cause of action have any application to the fourth cause of action.
[6] One of the complaints also prays for an order directing the defendants to establish a fund for medical monitoring of infants and others exposed to mercury.
[7] Plaintiffs also argued that even if CDA's conduct were deemed to arise out of the exercise of its right of free speech, there were numerous reasons, including the falsity of CDA's safety assurances, for which plaintiffs probably would prevail in the litigation.
[8] Cf., e.g., Massae v. Superior Court (1981) 118 Cal.App.3d 527, 535-536, 173 Cal.Rptr. 527 [for purpose of determining proper venue, "[i]f several types of relief are sought, it makes sense first to identify the `main relief sought, and then to concentrate on characterizing only the `main relief as local or transitory"]; Leeper v. Beltrami (1959) 53 Cal.2d 195, 214, 1 Cal.Rptr. 12, 347 P.2d 12 ["the modern tendency [in deciding between conflicting statutes of limitations in a mixed action] is to look beyond the relief sought, and to view the matter from the basic cause of action giving rise to the plaintiff's right to relief"]; Brown Materials Co., Ltd. v. Angus (1937) 20 Cal. App.2d 32, 38, 66 P.2d 470 [allegations incidental to actual cause of action in complaint should not deprive defendant of choice of venue].
[9] The reasoning of the Court of Appeal in Simmons was relied upon by the court in Roberts: "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 415.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend. [¶] By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. [Citation.] Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. [Citation.] This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." (Simmons v. Allstate Ins. Co., supra, 92 Cal. App.4th at pp. 1073-1074, 112 Cal.Rptr.2d 397; Roberts v. Los Angeles County Bar Assn., supra, 105 Cal.App.4th at pp. 612-613, 129 Cal.Rptr.2d 546.)
[10] The essence of the argument that the underlying issue is not one that should be decided through the judicial process is best expressed in an amicus curiae brief submitted in support of CDA's position: "This debate over amalgam fillings is long-standing, heated and protracted as shown by the literature on the subject and the litigation surrounding it. [Fn. omitted.] The anti-amalgam group of plaintiffs refer, derisively one suspects, to the defendants as `amalgam lovers;' and they, in turn, accuse the plaintiffs of being `obsessed,' irrationally one suspects, about felt dangers from amalgam fillings. Both sides claim scientific support for their respective positions and charge the other with reliance on junk science.' The twain between these antagonists is unlikely to close any time soon and, given the nature of the dispute, seems best resolved through public education and consumer choice, what Justice Holmes had in mind when he said `that the best test of truth is the power of the thought to get itself accepted in the competition of the market (Abrams v. United States (1919) 250 U.S. 616, 630, 40 S.Ct. 17, 63 L.Ed. 1173 (dis. opn. of Holmes, J.))."
[11] Wilcox was decided prior to the 1997 amendments that added subdivision (e)(4) and, in subdivision (a), directed that section 425.16 be construed broadly. (Stats.1997, ch. 271, § 1.) This amendment has expanded the scope of the statute. (See generally, Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1117-1120, 81 Cal.Rptr.2d 471, 969 P.2d 564; Equilon, supra, 29 Cal.4th at pp. 59-60 & fn. 3, 124 Cal.Rptr.2d 507, 52 P.3d 685.)
[12] Conceivably CDA might expel a member for advocating a view with which the association, disagreed. Such a step would present the question whether such expulsion was protected by the First Amendment's right of association (compare Boy Scouts of America v. Dak (2000) 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 with Bd. of Dir. of Rotary Int'l v. Rotary Club (1987) 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474) if not the right of free speech. Hypothetically, CDA might engage in other forms of activity meant to punish a dentist who disregarded its views concerning dental amalgam, such as a group boycott or the issuance of defamatory statements concerning the dentist. We emphasize that the record contains absolutely no indication that CDA has threatened or engaged in any such conduct. We do not address whether any such speculative activity would be deemed in furtherance of protected rights under section 425.16, much less whether the activity would be permissible under all of the statutory and constitutional provisions that would have to be considered, depending upon what that conduct might be.